PEOPLE v CRAWFORD
PEOPLE v HARRIS
PEOPLE v WILLIAMS

Docket Nos. 76715, 78743, 78744. Argued March 3, 1987 (Calendar
    Nos. 5-6). Decided October 6, 1987. Rehearing denied in *Craw-
    ford, post,* 1213.
    David L. Crawford was convicted in the Cheboygan Circuit Court,
        Robert C. Livo, J., of delivery of a controlled substance. The
        Court of Appeals, MacKenzie, P.J., and Chrzanowski, J. (R. M.
        Maher, J., dissenting in part), affirmed, holding that the rule
        requiring scheduling of preliminary examinations within
        twelve days of arraignment had not been violated even though
        the defendant's preliminary examination had been scheduled to
        occur twenty-seven days after his arraignment because the
        defendant had been free on bond during the period of delay
        (Docket No. 73588). The defendant appeals.
    Toby G. Harris and Miles J. Williams were convicted by a jury in
        the Genesee Circuit Court, Philip C. Elliott, J., of breaking and
        entering with intent to commit larceny. In addition, Williams
        pled guilty of being an habitual offender, fourth offense. The
        Court of Appeals, Shepherd, P.J., and M. J. Kelly and Tahvo-
        nen, JJ., reversed in an unpublished opinion per curiam on the
        ground that the defendants' preliminary examinations were
        held more than twelve days after their arraignments (Docket
        Nos. 78508, 79515). The people appeal.
    In an opinion by Justice Levin, joined by Justices Brickley,
        Cavanagh, and Archer, the Supreme Court *held:*
    1. A preliminary examination must be held, as required by
        MCL 766.4; MSA 28.922, within twelve days of an arraignment
        by a magistrate unless a delay beyond twelve days is supported
        by a showing, and a finding by the magistrate on the record no
        later than the twelfth day, of good cause for the delay. The

REFERENCES

Am Jur 2d, Criminal Law §§ 411 *et seq.*
Inclusion or exclusion of first and last days in computing the time
    for performance of an act or event which must take place a
    certain number of days before a known future date. 98 ALR2d
    1331.

issues whether the preliminary examination was timely held or the requisite showing for the delay was made on the record must be raised, if at all, no later than immediately before the commencement of the preliminary examination and may be raised by oral motion at that time. If the defendant fails to raise these issues before the commencement of the preliminary examination, the remedy of dismissal of the charges without prejudice provided for in *People v Weston,* 413 Mich 371 (1982), may not be invoked.

2. A defendant who timely raises these issues before the commencement of the preliminary examination, must, in order to challenge a denial of a motion, before trial, either file a timely application for leave to appeal with the circuit court or, within twenty days after the filing of the information in the circuit court, by moving to dismiss. If relief is denied by the circuit court, a defendant who wishes to obtain further review must file a timely application with the Court of Appeals, and, if relief is denied by the Court of Appeals, a further timely application with the Supreme Court.

*Crawford,* affirmed.

*Harris* and *Williams,* reversed and remanded.

Chief Justice RILEY, joined by Justice GRIFFIN, concurring in part and dissenting in part, stated that, while issues regarding a failure to schedule a preliminary examination in a felony case within twelve days of arraignment must be raised no later than immediately before commencement of the examination, the remedy of dismissal of charges without prejudice to the prosecutor to reinitiate the charges does not apply where the defendant was not incarcerated during the delay in holding the examination.

The requirement that preliminary examinations in felony cases be scheduled within twelve days of arraignment is not unqualified. A magistrate may adjourn, continue, or delay an examination beyond the twelve-day period without losing jurisdiction of a case. The remedy provided in *People v Weston* must be read in light of the wrong *Weston* sought to correct. *Weston* involved a defendant who remained in custody during the delay. Where the defendant is not in custody during the delay, the argument in favor of reversal of a conviction is much less compelling. It is difficult to conclude that such a result was intended. The cost to society is too great in light of the fact that the remedy does not cure the defect: the procedure for appeal only adds further delay.

Justice BOYLE, joined by Justice GRIFFIN, concurring in part and dissenting in part, stated that the rule of *People v Weston*

that dismissal without prejudice is the remedy for failure to schedule a preliminary examination for a defendant arraigned on a felony warrant within the period of time required in the Code of Criminal Procedure, should be overruled. While a remedy for delay might be dismissal of an information if prejudice were shown, the most logical remedy for a delay in holding a preliminary examination, consistent with the purpose of the statute, is the holding of an examination. The remedy provided by *Weston* adds more delay, while serving no legitimate purpose, and the majority's solution compounds the problem by adding further delay. Other remedies for such a violation exist under constitutional, statutory, and case law. The premise that a delay in an examination that does not prejudice an accused must result in the reversal and retrial of an error-free conviction cannot be accepted; nor can the conclusion that where there is no miscarriage of justice, justice requires such a reversal. There is neither wisdom in such a rule, nor support in case law other than *Weston*. The Legislature did not intend that result, and nothing in the sound administration of justice supports it.

143 Mich App 348; 372 NW2d 550 (1985) affirmed.

1. PRETRIAL PROCEDURE — PRELIMINARY EXAMINATION — ARRAIGNMENT — TWELVE-DAY RULE.

A preliminary examination must be held within twelve days of an arraignment by a magistrate unless a delay beyond twelve days is supported by a showing, and a finding by the magistrate on the record no later than the twelfth day, of good cause for the delay (MCL 766.4; MSA 28.922).

2. PRETRIAL PROCEDURE — PRELIMINARY EXAMINATION — TWELVE-DAY RULE.

A defendant must raise the issues whether a preliminary examination was timely held or the requisite showing for a delay was made on the record, if at all, no later than immediately before the commencement of the preliminary examination, and those issues may be raised by oral motion at that time; if the defendant fails to raise the issues before the commencement of the preliminary examination, the remedy of dismissal of the charges without prejudice may not be invoked (MCL 766.4; MSA 28.922).

3. PRETRIAL PROCEDURE — PRELIMINARY EXAMINATION — ARRAIGNMENT — TWELVE-DAY RULE — APPEAL.

A defendant who timely raises the issues that a preliminary examination was not held within twelve days of arraignment

and no showing was made on the record no later than the twelfth day of good cause for the delay must, in order to challenge a denial of a motion, before trial, either file a timely application for leave to appeal with the circuit court or, within twenty days after the filing of the information in the circuit court, move to dismiss; if relief is denied by the circuit court, a defendant who wishes to obtain further review must file a timely application with the Court of Appeals, and, if relief is denied by the Court of Appeals, a further timely application with the Supreme Court (MCL 766.4; MSA 28.922).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Thomas C. Johnson,* Assistant Attorney General, and *Joseph P. Kwiatkowski,* Prosecuting Attorney, for the people in *Crawford.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Edwin R. Brown,* Assistant Prosecuting Attorney, for the people in *Harris* and *Williams.*

State Appellate Defender (by *F. Michael Schuck*) for defendant Crawford.

*Barney R. Whitesman* for defendants Harris and Williams.

LEVIN, J. A statute requires that the magistrate set a day for a preliminary examination not exceeding twelve days after the arraignment before him of a person charged with having committed a felony.[1]

---

[1] The magistrate before whom any person is brought on a charge of having committed a felony shall set a day for a preliminary examination not exceeding 12 days thereafter, at which time a magistrate shall examine the complainant and the witnesses in support of the prosecution, on oath in the

In *People v Weston,* 413 Mich 371, 372; 319 NW2d 537 (1982), this Court reviewed the statutory language and said that there was "no question in this case that the date set was more than 12 days after the defendant appeared in the district court," and ruled that "[t]he magistrate was therefore required to discharge the defendant without prejudice to the prosecutor's right to later initiate an action against him."

In these cases, consolidated on appeal, dates were set for the preliminary examinations exceeding twelve days after the dates on which the defendants were arraigned.

A

In *Crawford,* seven days after arraignment, the defendant posted a money bond and was released from jail.[2] At the time set for the preliminary examination, twenty-seven days after the arraignment, Crawford moved to dismiss on the ground that the twelve-day rule was violated. The motion was denied, and Crawford was bound over. He renewed his motion to dismiss in the circuit court; the motion was denied. He was convicted at a bench trial of delivering a controlled substance.[3] The Court of Appeals affirmed.

The people claim that *Weston* is distinguishable because the defendant in *Weston* was incarcerated at all times between the arraignment and the

presence of the accused, in regard to the offense charged and in regard to any other matters connected with the charge which the magistrate considers pertinent. [MCL 766.4; MSA 28.922.]

[2] Crawford was arraigned on September 9, 1982. He posted a money bond and was released from jail on September 16, 1982. Notice was mailed to Crawford on September 28, 1982, setting October 6, 1982, as the date of the preliminary examination. The examination was held on that date.

[3] MCL 333.7401(2)(b); MSA 14.15(7401)(2)(b).

preliminary examination, while Crawford was incarcerated for only seven days, and thus was not incarcerated for more than twelve days after the arraignment.

**B**

In *Harris* and *Williams,* the defendants were incarcerated from the time of their arraignment through the date on which the preliminary examination was held.[4] The preliminary examination was held twenty-two days after Harris and Williams were arraigned. Harris and Williams did not raise the twelve-day issue before their trial. They were convicted by a jury of breaking and entering a building.[5] The Court of Appeals reversed on the basis of *Weston.*

The people claim that *Weston* is distinguishable because Harris and Williams did not move to dismiss for failure to comply with the twelve-day rule. In *Weston,* the defendant's lawyer stated at the beginning of the preliminary examination that the examination was originally scheduled for fourteen days after the arraignment, that the examination had been adjourned for an additional fourteen days, and that his client "would have preferred to proceed under the 12-day rule."

**C**

We agree with the people that the *Weston* remedy must be invoked by the defendant, if at all, before the trial. It would be disproportionate to dismiss the charge and discharge the defendant after trial and conviction because of a failure

---

[4] The Court of Appeals stated that the record showed that Harris made bond on the day of his arraignment, but was immediately or shortly thereafter arrested on another charge.

[5] MCL 750.110; MSA 28.305.

timely to hold the preliminary examination, where the defendant does not raise the issue before trial.

We hold that the *Weston* remedy of dismissal without prejudice may be invoked only by a defendant who raises the twelve-day issue before the preliminary examination is held, but that a defendant may raise the issue without regard to whether he was in custody throughout the twelve-day period between arraignment and the preliminary examination.

The issues whether the preliminary examination was timely held or the requisite record showing for delay was made, must be raised, if at all, no later than immediately before the commencement of the preliminary examination. These issues may be raised by oral motion at that time. If the defendant fails to raise these issues before the commencement of the preliminary examination, the *Weston* remedy of dismissal without prejudice may not be invoked.

To obtain appellate review, the defendant must, before the trial, timely file an application for leave to appeal from the denial of such a motion. If leave to appeal is denied by the Court of Appeals, a timely application may be filed with this Court. By requiring that the issue be raised by application for leave to appeal before the trial, the possibility of reversal after conviction on this basis should be avoided both where the defendant has been and where he has not been incarcerated between the arraignment and the preliminary examination.

D

Although Crawford duly raised the issue in the circuit court, a majority of the Court is of the opinion that Crawford's conviction should not on

this basis be reversed, and the Court of Appeals is affirmed.

Because Harris and Williams did not move to dismiss, we reverse the Court of Appeals in *Harris* and *Williams* and remand to the Court of Appeals for consideration of the other issues the defendants raised on appeal that were not reached by the Court of Appeals.

I

The statute makes no distinction between defendants who are, and those who are not, in custody. It requires, without regard to whether the defendant is in custody, that a preliminary examination be held within twelve days of the arraignment.[6] The statute further provides, again without regard to whether the defendant is in custody, that the preliminary examination may be adjourned, continued, or delayed by the magistrate only for "good cause shown."[7]

---

[6] See n 1.

[7]

A magistrate may adjourn a preliminary examination for a felony to a place in the county as the magistrate deems necessary. The accused may in the meantime be committed either to the county jail or to the custody of the officer by whom he was arrested or to any other officer; or, unless he is charged with treason or murder, he may be admitted to bail. An adjournment, continuance, or delay of a preliminary examination shall not be granted by a magistrate except for good cause shown. A magistrate shall not adjourn, continue, or delay the examination of any cause by the consent of the prosecution and accused unless in his discretion it shall clearly appear by a sufficient showing to the magistrate to be entered upon the record that the reasons for such consent are founded upon strict necessity and that the examination of the cause cannot then be had, or a manifest injustice will be done. An action on the part of the magistrate in adjourning or continuing any case, shall not cause the magistrate to lose jurisdiction of the case. [MCL 766.7; MSA 28.925.]

Thus, where there is good cause for delay,[8] the statute does not require that the examination be held within twelve days. It does require, however, that there be no delay in holding the examination beyond twelve days without good cause, and that a showing, and a finding by the magistrate of good cause, be made on the record.

While the Legislature might have provided a remedy, it is not uncommon for the Legislature to leave the task of devising a remedy to the judiciary. This Court provided a remedy in *Weston*. The Court considered the decisions of the Court of Appeals requiring the defendant to show prejudice and stated that "none of the cases provide a reasoned basis for the 'no prejudice/no reversible error' rule."[9] The Court said that it was unable to apply the miscarriage of justice statute[10] "in the face of an unqualified statutory command that the examination be held within 12 days."[11] Weston's conviction was reversed, and he was ordered discharged without prejudice to the prosecutor's right to reinstate a prosecution against him.[12]

II

It is argued that the statutory purpose is to

---

[8] Under some circumstances docket congestion may, in this instance of a twelve-day deadline for holding the examination, constitute good cause for delay.

[9] *People v Weston*, 413 Mich 371; 319 NW2d 537 (1982).

[10] MCL 769.26; MSA 28.1096.

[11] *Weston, supra*, p 376.

[12] The burden imposed on the prosecution, when the charges are dismissed without prejudice before the preliminary examination is held, is substantial and sufficient to encourage the magistrate timely to schedule and hold the preliminary examination or to establish a record with the requisite showing of good cause for delay required by the statute. The burden on the prosecution of dismissal without prejudice if the requisite showing is not made, while substantial, is not overwhelming. The charges can be refiled, the defendant rearrested, and a timely preliminary examination held.

require a preliminary examination within twelve days for the benefit of the presumptively innocent defendant where he is in custody. This statutory purpose is derived, not from language of the statute, but from language in *Weston* that speaks, in the second and third sentences of the following paragraph, of the importance of holding the preliminary examination where the defendant is in custody:

> A preliminary examination functions, in part, as a screening device to insure that there is a basis for holding a defendant to face a criminal charge. A defendant against whom there is insufficient evidence to proceed should be cleared and released as soon as possible. The notion that a presumptively innocent defendant should remain in custody until a convenient time arrives for the magistrate to conduct the preliminary examination is exactly what the Legislature precluded in MCL 766.1; MSA 28.919.[13]

*Weston* sought to implement and enforce the twelve-day rule, not to modify or vitiate it. The statute clearly requires that a preliminary examination be held within twelve days, without regard to whether the defendant is in custody, and it permits a delay only where the requisite showing has been made on the record. If the statutory purpose were limited to protecting defendants in custody from delay in holding the examination, then there could be unlimited delay when the defendant is not in custody.

Construing the statutory purpose as limited to protecting defendants in custody would be inconsistent with the clear statutory directive requiring a preliminary examination without regard to

---

[13] *Weston, supra,* p 376.

whether the defendant is in custody.[14] If, as is
clearly the case, the statute requires that a prelim-
inary examination be held within twelve days
without regard to whether the defendant is in
custody, then it cannot properly be said that the
statutory purpose is limited to protecting defen-
dants who are in custody.

### III

In sum:

(A) The preliminary examination shall be held,
as required by the statute, within twelve days of
the arraignment by the magistrate unless a delay
beyond twelve days is supported by a showing, and
a finding by the magistrate on the record no later
than the twelfth day, of good cause for the delay;

(B) The issues whether the preliminary examina-
tion was timely held or the requisite record show-
ing for delay was made must be raised, if at all, no
later than immediately before the commencement
of the preliminary examination; these issues may
be raised by oral motion at that time;

(C) If the defendant fails to raise these issues
before the commencement of the preliminary ex-
amination, the *Weston* remedy of dismissal with-
out prejudice may not be invoked;

(D) A defendant who timely raises these issues
before the commencement of the preliminary ex-

---

[14] If it shall appear to the magistrate at the conclusion of the
preliminary examination either that an offense has not been
committed or that there is not probable cause for charging the
defendant therewith, he shall discharge such defendant. If it
shall appear to the magistrate at the conclusion of the prelimi-
nary examination that a felony has been committed and there
is probable cause for charging the defendant therewith, the
magistrate shall forthwith bind the defendant to appear before
the circuit court of such county, or other court having jurisdic-
tion of the cause, for trial. [MCL 766.13; MSA 28.931.]

amination shall, if he wishes to challenge a denial
of his motion, before the trial either file a timely
application for leave to appeal with the circuit
court or, within twenty days after the filing of the
information in the circuit court, file a motion to
dismiss in the circuit court;

(E) If relief is denied by the circuit court, a
defendant who wishes to obtain further review
shall file a timely application with the Court of
Appeals, and, if relief is denied by the Court of
Appeals, a further timely application with this
Court.

We affirm the Court of Appeals in *Crawford.*

We reverse the Court of Appeals in *Harris* and
*Williams,* and remand to the Court of Appeals for
consideration of defendants' other issues.


BRICKLEY, CAVANAGH, and ARCHER, JJ., con-
curred with LEVIN, J.


RILEY, C.J. (*concurring in part and dissenting in
part*). I agree with the majority that issues regard-
ing the scheduling of the preliminary examination
must be raised no later than immediately before
commencement of the examination in order to
preserve appellate review. However, I disagree
with the majority that *People v Weston,* 413 Mich
371; 319 NW2d 537 (1982), is applicable if the
defendant is not incarcerated during the delay in
holding the preliminary examination. Addition-
ally, while I share the majority's concern about
reversing otherwise valid convictions solely on the
basis of a violation of the twelve-day rule, I cannot
subscribe to the proposed "remedy" which will
exacerbate rather than cure defects in the schedul-
ing of preliminary examinations.

I

The twelve-day rule, contained in MCL 766.4;
MSA 28.922 provides:

> The magistrate before whom any person is
> brought on a charge of having committed a felony
> shall set a day for a preliminary examination not
> exceeding 12 days thereafter, at which time a
> magistrate shall examine the complainant and the
> witnesses in support of the prosecution, on oath in
> the presence of the accused, in regard to the
> offense charged and in regard to any other matters
> connected with the charge which the magistrate
> considers pertinent.

Sometimes the twelve-day requirement may
prove to be rather onerous for the defendant or
the prosecution. The defendant may be experienc-
ing difficulty securing retained counsel, or counsel
may not have adequate time to prepare a strategy.
Witnesses may refuse or be unavailable to testify.
See *People v Den Uyl,* 320 Mich 477; 31 NW2d 699
(1948). Recognizing that in some situations there
may be good reasons to exceed the time provision
of MCL 766.4; MSA 28.922, and that, in fact,
failure to do so could be detrimental to the ends of
justice, the Legislature has provided that adjourn-
ments may be granted. MCL 766.7; MSA 28.925.

The function and importance of the preliminary
examination have been discussed several times by
this Court.[1] However, the issue of the remedy for

[1] See, e.g., *People v Johnson,* 427 Mich 98, 103-110; 398 NW2d 219
(1986); *People v Dunigan,* 409 Mich 765; 298 NW2d 430 (1980); *People
v Duncan,* 388 Mich 489; 201 NW2d 629 (1972); *People v Charles D
Walker,* 385 Mich 565; 189 NW2d 234 (1971).

The United States Supreme Court has determined that a prelimi-
nary examination is not constitutionally required. *Gerstein v Pugh,*
420 US 103; 95 S Ct 854; 43 L Ed 2d 54 (1975). Defendants have a

violation of the twelve-day rule was a question of first impression in *Weston.*[2]

In *Weston,* the defendant was arrested on September 4, 1978, and arraigned on September 6, 1978. His preliminary examination was scheduled to take place fourteen days later, on September 20, 1978, but was adjourned until October 4, 1978.[3] The examination was held on that day, at which time defense counsel raised the twelve-day issue. The defendant remained incarcerated during the entire delay.

At trial, a jury convicted the defendant of armed robbery. The Court of Appeals affirmed, rejecting the defendant's argument that the delay in holding his preliminary examination required reversal. We reversed the decision of the Court of Appeals. See *Weston, supra,* 376.

A preliminary examination functions, in part, as a screening device to insure that there is a basis for holding a defendant to face a criminal charge.

right to appointed counsel at the preliminary examination stage of proceedings. However, the violation of this right is subject to a harmless error analysis on appeal. *Coleman v Alabama,* 399 US 1; 90 S Ct 1999; 26 L Ed 2d 387 (1970); *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967).

An initial judicial determination of probable cause must be reached to constitutionally hold a defendant in custody. *Gerstein, supra.* The determination need not be reached in an adversarial proceeding. *Id.,* 120. A valid arrest warrant satisfies this requirement. The arraignment of a defendant arrested without a warrant also fulfills this function. See *People v Mallory,* 421 Mich 229, 239; 365 NW2d 673 (1984). This initial determination of probable cause takes place before the preliminary examination. An appointed counsel is not required as this is not a "critical stage" in the prosecution. *Gerstein, supra,* 122.

All defendants were promptly arraigned. In addition, Crawford was arrested under a warrant. Thus, there is no question that any detainment of defendants comported with the constitution.

[2] The Court of Appeals had decided several cases presenting violations of the twelve-day rule. See cases cited in *Weston, supra,* 375, n 6.

[3] The record did not indicate the reason for the initial scheduling of the examination beyond the twelve-day period or for the adjournment.

A defendant against whom there is insufficient
evidence to proceed should be cleared and released
as soon as possible. The notion that a presump-
tively innocent defendant should remain in cus-
tody until a convenient time arrives for the magis-
trate to conduct the preliminary examination is
exactly what the Legislature precluded in MCL
766.1; MSA 28.919.[4]

In the instant case, *Crawford,* the defendant was
not in custody during the period of delay. How-
ever, the majority argues that the statute does not
distinguish between "defendants who are, and
those who are not, in custody." *Ante,* p 158. Fur-
ther, since the Legislature did not provide a rem-
edy, the task was left to this Court. *Ante,* p 157.
Thus, the majority determines that *Weston* is
applicable even if the defendant is not incarcer-
ated during the delay.

I agree with the majority that the statute makes
no distinction between defendants in custody and
those who are not. Defendants in either circum-
stance have the statutory right to a preliminary
examination within twelve days of their arraign-
ment. However, neither logic nor the statute dic-
tates that the same remedy for the violation of the
statute be applied to defendants who are not incar-
cerated as that which is applied to those who are.

To support the proposition that *Weston* applies
to defendants not in custody, the majority cites
language in *Weston* which characterized the
twelve-day requirement as an "unqualified statu-
tory command that the examination be held
within 12 days." *Ante,* p 159. Initially, it must be
noted that this language is somewhat imprecise.
The "statutory command" that preliminary exami-
nations be held within twelve days is not "unquali-

---

4 The Court in *Crawford* relied on this language.

fied." The Legislature has specifically provided that a magistrate may adjourn, continue, or delay a preliminary examination beyond the twelve-day period. MCL 766.7; MSA 28.925. Furthermore, to do so does not cause the magistrate to lose jurisdiction of the case. *Id.*

More importantly, the statutory command must be read in light of the violation *Weston* sought to remedy. As *Weston* makes clear, the purpose of the twelve-day rule is to prevent delay in assessing the evidence against the defendant. Violation of the statute was particularly egregious in *Weston* because the "presumptively innocent" defendant remained in custody during the delay. That factor tipped the balance in favor of reversal. However, where the defendant is not in custody during the delay in holding the preliminary examination the argument in favor of reversing a conviction on this basis is much less compelling.

It must be stressed that the only detriment suffered by Crawford was a delay in the holding of his preliminary examination. He did receive a preliminary examination, as well as a full and fair trial. No evidence or statements were obtained from him during the delay. Furthermore, no witnesses disappeared or changed their testimony because of the late preliminary examination. The only basis for reversing Crawford's conviction would be the fifteen days, during which he was free on bond, that the examination was delayed. Such a reversal would result in another examination and retrial, with the presentation of the same evidence as in the first trial. In other words, more delay to remedy previous delay.

Of course, defendant might be quite willing to compound the earlier delay with more of the same. The passage of time will undoubtedly dull the witnesses' memories. There is also the possibility that an over-burdened prosecutor may not elect to

reinitiate charges. Thus, reversing a defendant's conviction could quite possibly result in complete exoneration. See *United States v Mechanik,* 475 US 66; 106 S Ct 938; 89 L Ed 2d 50 (1986).[5]

It is difficult to conclude that the Legislature intended that validly convicted defendants should go free under these circumstances. The cost to society is too great in light of the fact that the "remedy" does not cure the defect. Furthermore, the fatuity of applying the *Weston* remedy is evidenced by the majority's refusal to do so in *Crawford.* Defendant timely raised the issue before his preliminary examination and again before trial. In each instance Crawford's motion was denied, the respective courts being of the opinion that *Weston* did not apply if the defendant was not incarcerated during the delay. The Court of Appeals affirmed that conclusion. The majority has determined that *Weston* does apply even if the defendant was not incarcerated during the delay. Thus, the majority opinion would logically require reversing Crawford's conviction. Yet, despite the fact that Crawford has properly preserved the

---

[5] The defendants in *Mechanik* were found guilty of drug charges by a jury after a three-day trial. On appeal to the United States Supreme Court, they argued that defects in the indictment proceedings required reversal. Two law enforcement agents apparently had testified in tandem before the grand jury, arguably in violation of the Federal Rule of Criminal Procedure 6(d). The Supreme Court held that even if rule 6(d) had been violated, reversal was not required.

The reversal of a conviction entails substantial social costs: it forces jurors, witnesses, courts, the prosecution, and the defendants to expend further time, energy, and other resources to repeat a trial that has already once taken place; victims may be asked to relive their disturbing experiences. . . . The "[p]assage of time, erosion of memory, and dispersion of witnesses may render retrial difficult, even impossible." . . . Thus, while reversal "may, in theory, entitle the defendant only to retrial, in practice it may reward the accused with complete freedom from prosecution," . . . and thereby "cost society the right to punish admitted offenders." [*Mechanik, supra,* 72.]

issue for review,[6] the majority affirms his conviction. *Ante,* pp 157–158. This is particularly mystifying because, other than the fact that Crawford was free on bond during the delay, this case is virtually indistinguishable from *Weston.* The majority fails to explain how this result provides defendant with a meaningful remedy to enforce the statutory directive. In any event, I would hold that the *Weston* remedy does not apply in cases where the defendant is not in custody during the delay.

II

The majority has instituted a new procedure, intended to eliminate the severe result of reversing otherwise valid convictions on the basis of twelve-day rule violations. While I agree with the majority that such a result is unduly harsh, I cannot concur in the announced procedure.

In the future, a defendant must raise the issue of a twelve-day rule violation immediately before the commencement of the preliminary examination. Failure to raise the issue waives appellate review of the question.

In the event that the magistrate agrees with the defendant, the motion to dismiss will be granted. Thus, the majority's procedure for appellate review is unnecessary in this circumstance.

In the event that the magistrate denies a defendant's motion, the preliminary examination assumedly will proceed.[7] At the conclusion of the

---

[6] Of course, defendant cannot be faulted for failing to employ the majority's heretofore nonexistent interlocutory appeals procedure.

[7] Since the purpose of the new appellate procedure is to eliminate the potential for reversal of otherwise valid convictions, I assume that the defendant's trial will be delayed during the course of the appeals. No mention is made whether the preliminary examination will also be delayed. However, since the statute explicitly does not allow the

examination, the defendant will either be released or bound over on the charges.

If the defendant is released, there is no necessity of appellate review of the denial of the motion to dismiss. Thus, the only scenario in which the majority's review procedure is implicated is where the defendant raises the issue before the preliminary examination, the motion to dismiss is denied, and the evidence is found sufficient to bind the defendant over for trial.

Unfortunately, at this stage in the proceedings, there is simply no way to return to the defendant the benefit which would have accrued under the twelve-day rule. The purpose of the rule is to insure a prompt preliminary examination. Once the preliminary examination is held, any delay in the scheduling cannot be remedied. In a similar situation, the *Mechanik* Court noted:

> [T]here is no simple way after the verdict to restore the defendant to the position in which he would have been had the indictment been dismissed before trial. He will already have suffered whatever inconvenience, expense, and opprobrium that a proper indictment may have spared him. In courtroom proceedings as elsewhere, "the moving finger writes; and, having writ, moves on." Thus reversal of a conviction after trial free from reversible error cannot restore to the defendant whatever benefit might have accrued to him from a trial on an indictment returned in conformity with [Federal Rule of Criminal Procedure] 6(d). [*Mechanik, supra,* 71.]

The same may just as accurately be said for dis-

___

preliminary examination to be delayed on the defendant's consent, it would be an anomalous result to allow defendant to force a delay by raising this issue. Therefore, I assume that the majority does not intend for the preliminary examination to be stayed upon the denial of defendant's motion to dismiss.

missing the charges against a defendant, bound over in an error-free preliminary examination, for a twelve-day rule violation.

In addition to being ineffectual, the procedures instituted by the majority actually worsen the delay rather than remedy it. The majority provides:

> To obtain appellate review, the defendant must, before the trial, timely file an application for leave to appeal from the denial of such a motion. If leave to appeal is denied by the Court of Appeals, a timely application may be filed with this Court. By requiring that the issue be raised by application for leave to appeal before the trial, the possibility of reversal after conviction on this basis should be avoided both where the defendant has been and where he has not been incarcerated between the arraignment and the preliminary examination. [*Ante,* 157.]

Even if these appeals are handled expeditiously and in a summary manner, it is clear that this appellate procedure will take many times the twelve-day period in which the statute requires the preliminary examination be held. Thus rather than remedying the delay sought to be prevented by the statute, the majority's procedure only adds further delay.

The majority does not make clear whether a defendant who properly preserves the issue by raising it before the preliminary examination and then pursuing the majority's interlocutory appellate procedure may raise the issue in an appeal by right following a conviction. Since Crawford properly preserved the issue, and the majority refuses to reverse his conviction, I assume the same will follow under this new procedure. If this is true, and I do not see how it logically cannot be, the

consequence of denying the defendant's motion for interlocutory appeal will effectively result in a decision of the issue on its merits.

The remedy for delay is promptness rather than additional delay. In order to vindicate a defendant's right to a prompt preliminary examination, the time for a remedy is before the preliminary examination takes place. Therefore, if the preliminary examination has been delayed, the defendant should be required to move the court for a prompt examination. Barring good cause, MCL 766.7; MSA 28.925, the magistrate would be obliged to grant the motion. This would terminate the delay, without adding further delay as would result from dismissal and reinitiation of the charges. Thus, there would be no potential for "unlimited delay" which the majority fears would result from holding that the *Weston* remedy is inapplicable where the defendant is not incarcerated during the delay.

### CONCLUSION

I concur with the majority in reversing the Court of Appeals decision in *Harris* and *Williams.* However, I would affirm the Court of Appeals decision in *Crawford* as the *Weston* remedy does not apply where the defendant is not incarcerated during the delay in holding the preliminary examination. Finally, I do not join the portion of the majority opinion announcing the new appellate procedure.

GRIFFIN, J., concurred with RILEY, C.J.

BOYLE, J. (*concurring in part and dissenting in part*). I concur with Chief Justice RILEY's result, but write separately to state that as the debate between the majority and minority indicates, the

rule of *People v Weston,* 413 Mich 371; 319 NW2d 537 (1982), was ill conceived. Rather than seek to distinguish that holding, *Weston* should be overruled and its potential for mischief put to rest.

For one to clearly understand the issue here, it must be first stated: no justice of this Court is of the opinion that any defendant involved in these cases was given a trial in which any error occurred. We posit convictions of defendants at error-free trials where the prosecution proved guilt beyond a reasonable doubt.

The majority recognizes that it is "disproportionate to dismiss the charge and discharge the defendant after trial and conviction . . . ." *Ante,* p 156. The majority seems to feel that this situation can be avoided and the statute can be enforced by imposing the new procedural requirements. If it is desirable to avoid the disproportionate effect of the *Weston* remedy, the majority proposal is seriously flawed.

The majority fails to explain what the result will be if the defendant takes all the procedural steps necessary to preserve the issue and relief is denied. The Chief Justice assumes that the denial of interlocutory appeal "will effectively result in a decision of the issue on its merits." *Ante,* p 171. I disagree. I assume that the majority opinion means that an interlocutory denial would not be a decision on the merits and that a defendant who had preserved the issue by complying with the interlocutory procedure will be allowed to secure *Weston* relief on appeal after conviction.

The majority states, "If the defendant fails to raise these issues before the commencement of the preliminary examination, the *Weston* remedy of dismissal without prejudice may not be invoked." *Ante,* p 157. The negative pregnant of this statement is that if the defendant does raise these

issues before the commencement of the preliminary examination, the *Weston* remedy, that is, dismissal of a *conviction* without prejudice, may be invoked.

As the Chief Justice notes, the interlocutory appellate procedure will take many times the twelve-day period in which the statute requires the preliminary examination. If the Chief Justice is correct in assuming that interlocutory denial is a decision on the merits, a defendant who takes all pretrial steps will secure either a dismissal of the information or a denial which is a decision on the merits. In the case of a dismissal of the information, the entire process has been delayed for the appeals period. In the case of a denial which is treated as a decision on the merits, the trial has been delayed for the appeals period.

Assuming, as I do, that the majority opinion intends that interlocutory denial implies nothing regarding the Court's view of the merits, *Great Lakes Realty Corp v Peters,* 336 Mich 325; 57 NW2d 901 (1953), the interlocutory procedures here set forth have an even more mischievous result. If this assumption is correct, a defendant will have preserved the *Weston* remedy by invoking the interlocutory procedure with consequent delay and will then, after trial and conviction, be able to secure the *Weston* remedy on appeal, and the process will start again.

Under either approach, the majority has compounded the *Weston* problem by adding further delay. Either approach makes the purported solution to *Weston* worse than the problem *Weston* created.[1]

*Weston* erred first in assuming that the remedy for a pretrial violation of MCL 766.7; MSA 28.925

[1] I would respectfully suggest that a solution to the *Weston* problem must speak to this ambiguity for the benefit of the bench and bar.

should be reversal of a conviction. Both the state and the accused are entitled to a prompt examination under the statute. While a remedy for delay might be dismissal of the information if prejudice were shown,[2] the most obvious remedy for a delay in examination is the holding of an examination. This is the logical inference to be drawn from the purpose of the statute, and it is supported by the provision of the statute which states: "An action on the part of the magistrate in adjourning or continuing any case, shall not cause the magistrate to lose jurisdiction of the case." MCL 766.7; MSA 28.925. Despite these words, *Weston* and the majority treat the statute as if the failure to timely hold the examination or to support the delay with adequate reasons is a jurisdictional defect requiring pretrial discharge of a defendant.

Secondly, *Weston's* assumption that the Legislature intended that its directive was to be enforced by reversal, despite the absence of prejudice, flies in the face of the Legislative directive that "[n]o judgment or verdict shall be set aside or reversed . . . for error as to any matter of . . . procedure, unless . . . it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice." MCL 769.26; MSA 28.1096.

Since the *Weston* remedy of discharge without prejudice adds more delay to the process by permitting renewal of the prosecution, the *Weston* remedy is simply a waste of time and resources which can benefit a defendant only if the retrial falters for lack of witnesses, evidence, or prosecution interest. No legitimate interest is served by

---

[2] This Court's Committee on the Proposed Rules of Criminal Procedure has proposed that "[a] violation of this subrule is to be deemed harmless error unless the defendant demonstrates actual prejudice." Proposed Rule 6.107(B).

the *Weston* result. As the Chief Justice observes, the majority remedy not only suffers from the same fault, but actually builds even further delay into the process.

Other remedies for a violation of the statute exist. Where a probable cause determination has not been made, the Fourth Amendment requires a state to provide a prompt determination of probable cause by a judicial officer "as a condition for any significant pretrial restraint of liberty," *Gerstein v Pugh,* 420 US 103, 125; 95 S Ct 854; 43 L Ed 2d 54 (1975).

Moreover, whether defendants are incarcerated or not, this Court has recognized that prolonged delay in concluding examination will justify the pretrial issuance of process mandating the conclusion of the examination or the discharge of the defendant, *People v Den Uyl,* 320 Mich 477; 31 NW2d 699 (1948). The unexcused failure of the magistrate to perform a clear legal duty would also be an appropriate subject for a writ of superintending control, *People v Flint Municipal Judge,* 383 Mich 429, 432; 175 NW2d 750 (1970). Such a situation would of course be correctable through use of our administrative powers of superintending control. *Jett v Recorder's Court Judge,* 366 Mich 281; 114 NW2d 504 (1962). MCR 3.302.

Finally, the majority seems most troubled by the prospect that a magistrate might fail to fulfill the oath of office to uphold the laws of this state and that such a failure would not be corrected. *Weston* and the majority proceed from the incorrect assumption that all error must not only be capable of correction, but actually be corrected on appeal. In fact, even if it be posited that the magistrate erred in continuing an examination and that the circuit court, the Court of Appeals, and this Court all erroneously denied leave to appeal and

affirmed the magistrate, the delay would warrant
reversal, if delay had impaired the right to a fair
trial, *United States v Marion,* 404 US 307; 92 S Ct
455; 30 L Ed 2d 468 (1971). If, however, the delay
did not impair the defendant's right to a fair trial,
it would not warrant reversal, even though the
magistrate erred and the appeals courts failed to
correct the error.

The Code of Criminal Procedure contains a num-
ber of provisions urging magistrates to certain
forms of conduct: A magistrate shall not issue
warrants for other than minor offenses without
security for costs or initiation by the prosecution
or other significant officials, MCL 764.1; MSA
28.860, a warrant shall be directed to a peace
officer, MCL 764.16; MSA 28.875, the magistrate
shall certify the recognizance for appearance, MCL
764.6; MSA 28.865, and the magistrate shall in-
form an alleged felon of his rights and give him an
opportunity to speak, MCL 764.26, 765.6; MSA
28.885, 28.893. A violation of these statutory duties
might be correctable prior to trial by one or more
of the remedies suggested above, but it could not
be legitimately posited that such a violation must
be corrected by vacation of a trial verdict un-
tainted by the error. If, for example, a magistrate
failed to advise a defendant of his rights and the
prosecution did not use evidence procured by rea-
son of the statutory violation at the trial, an
otherwise valid conviction would not be reversible,
even if the defendant had sought pretrial relief
and it had erroneously been denied.

I cannot accept the premise that the Legislature
intended that the appropriate response to a delay
in examination that does not cause prejudice to an
accused should be the reversal and retrial of an
error-free conviction. Nor can I accept the conclu-
sion that where there is no miscarriage of justice,

justice requires reversal of a conviction. I cannot accept such premises and conclusions because, apart from this Court's ill-conceived opinion in *Weston,* there is nothing in law to support them and much which refutes them. Nor is there wisdom in such a rule. The majority would impose the most severe systemic penalty, reversal of a conviction, for a one-day violation of a time requirement, despite the assumption that the judgment was validly obtained and error free. The Legislature did not intend that result, and nothing in the sound administration of justice supports it.

I would overrule *Weston* and affirm the judgment of the Court of Appeals in *Crawford.* In *Harris* and *Williams,* I would reverse the judgment of the Court of Appeals and remand the case for consideration of those issues not reached by the Court of Appeals.

GRIFFIN, J., concurred with BOYLE, J.

MILLROSS v PLUM HOLLOW GOLF CLUB

Docket No. 77710. Argued November 13, 1986 (Calendar No. 16). Decided October 6, 1987.

Virginia M. Millross, for herself, as next friend of Michael L. Millross, John E. Millross, and Edward B. Millross, and as personal representative of the estate of James E. Millross, deceased, brought an action in the Oakland Circuit Court against Plum Hollow Country Club, alleging negligence in the supervision of and failure to provide alternative transportation for an employee who had become intoxicated at a job-related dinner and thereafter was involved in an automobile accident which caused the death of plaintiff's decedent. The court, Alice L. Gilbert, J., granted summary judgment for the defendant, finding that there was no common-law duty to provide transportation to and from the employment premises and that the plaintiff's negligence claim based on the dispensing of an alcoholic beverage was preëmpted by the exclusive remedy provision of the dramshop act. The Court of Appeals, R. M. MAHER, P.J., and BRONSON and D. F. WALSH, JJ., reversed, holding that the claims of improper supervision and failure to provide alternate transportation are recognized at common law and are not precluded under the dramshop act (Docket No. 80483). The defendant appeals.

In an opinion by Justice BOYLE, joined by Chief Justice RILEY and Justices BRICKLEY and CAVANAGH, the Supreme Court *held:*

The dramshop act provides the exclusive remedy against liquor licensees for injuries caused by conduct arising out of the selling, giving, or furnishing of intoxicating beverages. However, common-law claims not based on facts related to such conduct are not excluded under the act. In determining whether a common-law claim has been validly pled, reference must be made to the common-law obligation which would expose the defendant to liability.

1. The dramshop act was intended to provide a new remedy

REFERENCES

Am Jur 2d, Intoxicating Liquors §§ 561 *et seq.*

Common-law right of action for damage sustained by plaintiff in consequence of sale or gift of intoxicating liquor or habit-forming drug to another. 97 ALR3d 528.

for injuries caused by an intoxicated person by establishing a new and particular right of recovery against the bar owner who sold intoxicating liquor to the visibly intoxicated .person and against the principal and sureties under a bond required of the liquor licensee under the act—problems not adequately addressed at common law. The act also was intended to be the exclusive remedy against the liquor licensee for damages aris- ing out of the selling, giving, or furnishing of intoxicating liquor. Generally, where a statute creates a new right and prescribes a particular remedy, the remedy is exclusive and must be strictly construed. The principle is particularly appli- cable to the dramshop act.

2. Licensees remain liable, however, for breach of independent common-law duties. Claims that are subject to the exclusive remedy provision are those that arise out of the unlawful or negligent sale, giving away, or furnishing of intoxicants. While the word "unlawful" qualifies a plaintiff's right to recovery under the act, that aspect of the conduct does not determine whether the act applies. It is not the "unlawful" aspect of the conduct which determines whether the exclusive remedy provision of the act should be invoked. Rather, it is the underlying conduct that must be analyzed. Negligence claims that arise out of conduct other than the furnishing, selling, or giving away of intoxicants and which are independently recognized at common law are neither abrogated nor controlled by the dramshop act.

3. In this case, the plaintiff failed to plead a valid cause of action. The common-law duty to supervise an employee does not apply under the circumstances presented. Because the only duty alleged was that of the defendant not to furnish intoxicating beverages to its employee, the dramshop act provides the plaintiff's exclusive remedy. Negligence in the furnishing of alcohol to an able-bodied person was not a tort at common law, and an allegation that the person was tired, or was required to attend a banquet does not alter that conclusion.

Reversed and remanded.

Justice LEVIN, concurring, agreed that the complaint did not state a claim for breach of an independent common-law duty, but stated that while the plaintiff's claim is based on the black letter language of § 317 of the Restatement of Torts, 2d, that language, when read in the light of the case law underlying its promulgation, does not support the claim. Rather, it speaks only of the exercise of reasonable care by an employer to control the conduct of an employee upon the premises of the

employer or other premises that the employee is privileged to enter only as an employee. In this case, the employer's conduct is not conduct that heretofore has been thought there is a duty to control; the actions of the employee which were alleged to have caused the accident occurred off the employer's premises on a public highway.

Justice ARCHER, dissenting, stated that *Romeo v Van Otterloo,* 117 Mich App 333 (1982), should not be overruled because its facts are sufficiently different to be distinguished from this case. The case should be remanded to the trial court to permit the plaintiff to amend her complaint to allege that the employer knew or should have known that its employee could not have been trusted with the responsibility given him.

Justice GRIFFIN took no part in the decision of this case.

146 Mich App 680; 381 NW2d 786 (1985) reversed.

*Romeo v Van Otterloo,* 117 Mich App 333; 323 NW2d 693 (1982), overruled.

1. INTOXICATING LIQUORS — DRAMSHOP ACT — EXCLUSIVE REMEDY — COMMON LAW.

The dramshop act provides the exclusive remedy against liquor licensees for injuries caused by conduct arising out of the selling, giving, or furnishing of intoxicating beverages; however, common-law claims not based on facts related to such conduct are not excluded under the act; in determining whether a common-law claim has been validly pled, reference must be made to the common-law obligation which would expose the defendant to liability (MCL 436.22[11]; MSA 18.993[11]).

2. INTOXICATING LIQUORS — DRAMSHOP ACT — EXCLUSIVE REMEDY — NEGLIGENCE.

Claims subject to the exclusive remedy provision of the dramshop act are those that arise out of the unlawful or negligent sale, giving away, or furnishing of intoxicants; however, while the word "unlawful" qualifies a plaintiff's right to recovery, that aspect of the conduct does not determine whether the act applies or whether the exclusive remedy provision should be invoked; rather, it is the underlying conduct that must be analyzed, and negligence claims that arise out of conduct other than the furnishing, selling, or giving away of intoxicants and which are independently recognized at common law are neither abrogated nor controlled by the act (MCL 436.22[11]; MSA 18.993[11]).

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Kathleen L. Bogas*), for the plaintiffs.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Roger F. Wardle* and *Timothy F. Casey*) for the defendant.

BOYLE, J. The issue presented by this case is whether the exclusive remedy of the dramshop act bars plaintiff's claim against defendant for the negligent supervision of an employee. We hold that plaintiff's negligence claim which arose out of the selling, giving, or furnishing of alcoholic liquor by a liquor licensee is preëmpted by the exclusive remedy of the dramshop act. We further hold that the plaintiff has failed to assert a valid cause of action on the basis of negligent supervision of an employee and failure to provide alternative transportation. The decision of the Court of Appeals is therefore reversed and remanded for proceedings consistent with this opinion.

### I. FACTS

The Court of Appeals sets forth the facts:

At approximately 11:19 P.M. on June 22, 1981, James Edgar Millross was fatally injured when he was struck by an automobile operated by defendant Daniel Tomakowski. A few minutes before the collision, Millross had been traveling north on Lahser Road. Near the intersection of Ten Mile Road and Lahser in Southfield, Millross witnessed an automobile accident. He pulled his vehicle over to the side of the road and went to offer aid to one of the persons involved in the accident, 19-year-old Suzanne Waffle. Tomakowski, who was proceeding north on Lahser toward Ten Mile Road, did not see Miss Waffle's car and collided with her vehicle, thereby injuring Millross.

Tomakowski was the "caddie master" at defendant Plum Hollow Golf Club. After putting in a full day's work as caddie master, Tomakowski had attended the Evans Scholarship Foundation dinner at Plum Hollow. Tomakowski's attendance at the dinner was a part of his job responsibilities. Cocktails had been served by Plum Hollow personnel to Tomakowski and the other guests prior to the dinner. The accident with Millross occurred when Tomakowski was on his way home from the dinner. [146 Mich App 680, 682-683; 381 NW2d 786 (1985).]

Plaintiff, Virginia Millross, widow of the deceased, filed her original complaint in Oakland Circuit Court in July, 1981. The complaint was amended several times between 1981 and 1984. Count II alleged that defendant Plum Hollow was liable to plaintiff pursuant to the dramshop act, MCL 436.22 et seq.; MSA 18.993 et seq., for injuries sustained as a result of Tomakowski's collision with Millross. Count IV alleged that Plum Hollow was liable for Tomakowski's negligent driving by reason of the doctrine of respondeat superior and by its failure to properly supervise Tomakowski or provide him with an alternate means of transportation home.

The dramshop claim against Plum Hollow in count II was resolved and a consent judgment was entered in the amount of $591,500. Paragraph 10 of count IV alleging liability on the basis of respondeat superior was stricken. None of these actions are on appeal before this Court.

The subject of this appeal is the grant of summary disposition for failure to state a claim upon which relief could be granted in favor of Plum Hollow on the negligence claim alleged in count IV. GCR 1963, 117.2(1), now MCR 2.116(C)(8). The trial court granted defendant summary disposition

finding that (1) there is no common-law duty of an employer to provide transportation to and from the employment premises, and (2) plaintiff's negligence claim was based upon the dispensing of an alcoholic beverage and was therefore preëmpted by the exclusive remedy of the dramshop act.

The Court of Appeals reversed the grant of summary disposition on the basis that plaintiff's claim for improper supervision or failure to provide alternate transportation is a recognized common-law claim which is not precluded by the dramshop act. We granted leave to appeal. 425 Mich 852 (1986).

## II. THE EXCLUSIVE REMEDY OF THE DRAMSHOP ACT

Whether or not a statutory scheme preëmpts the common law on a subject is a matter of legislative intent. *Jones v Rath Packing Co,* 430 US 519; 97 S Ct 1305; 51 L Ed 2d 604 (1977), reh den 431 US 925 (1977). In general, where comprehensive legislation prescribes in detail a course of conduct to pursue and the parties and things affected, and designates specific limitations and exceptions, the Legislature will be found to have intended that the statute supersede and replace the common law dealing with the subject matter. 2A Sands, Sutherland Statutory Construction (4th ed), § 50.05, pp 440-441.

At common law, negligence in the sale or furnishing of intoxicating liquor to an ordinary able-bodied person was not a tort even though a result of intoxication was injury to the intoxicated person or others. *Manuel v Weitzman,* 386 Mich 157, 163; 191 NW2d 474 (1971). The reason for this rule was that it was the drinking of the liquor, rather than the furnishing of it, which was deemed the proximate cause of the injury. *Longstreth v Gen-*

*sel,* 423 Mich 675, 684; 377 NW2d 804 (1985). Dramshop acts were intended to fill the void that existed at common law. *Id.*

In Michigan, by statute, a "wife, husband, child, parent, guardian, or other person" injured by "a visibly intoxicated person" by reason of the unlawful sale or furnishing of intoxicants to such person has a cause of action against the tavern owner where the sale of intoxicating liquor is proven to be a proximate cause of the injury. MCL 436.22(5); MSA 18.993(5).

This Court has recognized that by enacting the dramshop act the Legislature created a new remedy for a new and particular right. *Browder v Int'l Fidelity Ins Co,* 413 Mich 603, 612; 321 NW2d 668 (1982). The new remedy is not against the intoxicated person who causes an actual injury, but against the bar owner who sells intoxicating liquor to a minor or a visibly intoxicated person and against the principal and sureties on the bond which the licensee is required to procure under the act. *Browder, supra.*

As a general principle of law, where a statute creates a new right and prescribes a particular remedy, the remedy is exclusive and must be strictly construed. *Holland v Eaton,* 373 Mich 34; 127 NW2d 892 (1964), overruled on other grounds 394 Mich 179; 229 NW2d 332 (1975). See also *Thurston v Prentiss,* 1 Mich 193 (1849); *In re Quinney Estate,* 287 Mich 329; 283 NW 599 (1939). Application of the foregoing principle is particularly appropriate here because the dramshop act appears as a self-contained measure with the new remedy and liability under it carefully balanced in a fair and reasonable manner. In *Browder, supra,* p 614, while discussing the exclusive nature of the remedy and period of limitations in the dramshop act, this Court observed the following:

On the one hand, the injured party is protected by a new and non-common-law remedy against a person not otherwise liable, the bar owner. In addition, the bar owner has to be bonded, and both the bond principal and sureties are liable, the sureties to the extent of the bond. This reasonably assures the plaintiff of recovery against a financially responsible person or persons. On the other hand, the bar owner and those liable on the bond, who themselves did not commit, and may not have been aware of the commission of, the tort, are protected from stale claims which they might find particularly difficult to investigate.

Moreover, the Legislature has demonstrated a clear propensity to consider and reconsider the provisions of the dramshop act to keep it internally balanced.[1] Therefore, this Court has found that the Legislature intended the dramshop act to

---

[1] As observed in *Browder, supra,* 614-615:

[T]he Legislature has carefully considered and reconsidered the dramshop act to keep it internally balanced. As we have seen, the first adjustment was to add a specific two-year period of limitations where none had existed before. Compare 1958 PA 152, § 22(2) *with* 1933 [Ex Sess] PA 8, § 22 [1948 CL 436.22(2); MSA 18.993(2)]. Then the Legislature enacted a provision requiring that the bond automatically continue from year to year unless the Liquor Control Commission is given ten days' written notice by the surety of its intent to cancel the bond. 1961 PA 224. In 1972, several changes were made. Originally, the act provided for exemplary damages, 1933 [Ex Sess] PA 8, § 22, but this apparently tilted the act too far in favor of the claimant, so the Legislature modified the act to provide only for actual damages. The requirement of proximate causation was specifically added as was the provision giving the principal and surety all factual defenses which the intoxicated person or minor possessed. Finally the intricate balance was kept by requiring the plaintiff to name and maintain the intoxicated person who actually committed the injury as a defendant. 1972 PA 196, § 22(2). This, of course, is to avoid possible collusion between the plaintiff and the one who caused the injury. Cf. *Salas v Clements,* 399 Mich 103, 110; 247 NW2d 889 (1976). In short, the Legislature has carefully created a self-contained package which has its own built-in checks and balances, among which are included a specified cause of action and period of limitations.

be a complete and self-contained solution to a problem not adequately addressed at common law and the exclusive remedy for any action arising under "dramshop-related facts."[2] *Browder, supra,* p 616. Indeed, the Legislature has amended the act to expressly codify this intent in 1986 PA 176, which provides in pertinent part, "This section provides the exclusive remedy for money damages against a licensee arising out of the selling, giving, or furnishing of alcoholic liquor." MCL 436.22(11); MSA 18.993(11).

Plaintiff contends, however, that notwithstanding the exclusive remedy nature of the dramshop act, Michigan courts have long recognized that liquor licensees remain liable for breach of independent common-law duties. We agree. In *Manuel v Weitzman, supra,* 164-165, quoting *De Villez v Schifano,* 23 Mich App 72, 77; 178 NW2d 147 (1970), this Court stated:

---

Further significant refinements were made in 1986 PA 176. They include a notice requirement for all potential defendants in a dramshop action, § 22(5); a rebuttable presumption that only the last retail licensee is liable under the act, § 22(9); denial of recovery under the act to members of the alleged intoxicated person's family, § 22(10); and a requirement that liquor licensees file proof of financial responsibility to satisfy obligations under the act, § 22a(2).