*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANDREW LEE PASCHAL,

        Defendant-Appellant.

UNPUBLISHED
January 17, 2019

No. 337625
Wayne Circuit Court
LC No. 16-007379-01-FH

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DION DELANDO ANDERSON,

        Defendant-Appellant.

No. 337631
Wayne Circuit Court
LC No. 16-008405-01-FC

Before: LETICA, P.J., and CAVANAGH and METER, JJ.

PER CURIAM.

In Docket No. 337625, defendant Paschal appeals as of right his convictions of unarmed robbery, MCL 750.530, and unlawful imprisonment, MCL 750.349b. In Docket No. 337631, defendant Anderson appeals as of right his conviction of first-degree home invasion, MCL

750.110a(2). The appeals were consolidated for the purpose of administrative efficiency.[1] We affirm in each appeal.

## I. BACKGROUND

Defendants' convictions arise from the assault and robbery of Edward Taliaferro after defendants and two accomplices broke into Taliaferro's apartment. Taliaferro was in a relationship with defendant Anderson's mother, Gloria Anderson, with whom he shared the apartment. Defendants allegedly believed that Taliaferro was stealing from Gloria.[2] At issue in this case was Taliaferro's possession of Gloria's debit card. Taliaferro testified that Gloria had given him the debit card to purchase items for the apartment; defendants, however, believed that Taliaferro had used the debit card to steal from Gloria.

Taliaferro testified that he was alone in his apartment when Dominique Anderson entered the apartment through a back window.[3] According to Taliaferro, he told Dominique to leave, but she ran past him to unlock the front door, letting defendants into the apartment along with a third person. Taliaferro testified that defendant Paschal pointed a gun at him and that Dominique knocked him to the ground, after which all four intruders kicked, stomped, and beat him. After being beaten for a couple minutes, Taliaferro gave the intruders Gloria's debit card. The intruders then dragged Taliaferro into another area of the apartment and searched his pockets. According to Taliaferro, defendant Paschal held him while defendant Anderson took some cigarettes and a few dollars from his pockets, after which the intruders exited the apartment.

Taliaferro's sister, Yolanda Smith, and her daughter resided in the same apartment complex as Taliaferro. Smith testified that her daughter was looking out their apartment window and saw Taliaferro being attacked. Smith and her daughter then went to Taliaferro's apartment and tried to intervene, but were unsuccessful. According to Smith, when she and her daughter tried to leave the apartment, defendant Paschal slammed the door, blocked their exit, and told them that they were not going to leave because they would call the police. Smith testified that she and her daughter were only able to leave the apartment when defendant Paschal left a door unattended. Smith testified that she did not see anyone with a gun.

Defendants were each charged with first-degree home invasion, MCL 750.110a(2), unarmed robbery, MCL 750.530, and assault and battery, MCL 750.81. Defendant Paschal was also charged with unlawful imprisonment, MCL 750.349b. Defendants were tried jointly, before

---

[1] *People v Paschal*, unpublished order of the Court of Appeals, issued March 22, 2018 (Docket No. 337625); *People v Anderson*, unpublished order of the Court of Appeals, issued March 22, 2018 (Docket No. 337631).

[2] Because several persons related to this appeal share a common surname, we will use first names in this opinion where appropriate.

[3] Dominique is defendant Anderson's sister and defendant Paschal's wife. For her part in these crimes, she was convicted of first-degree home invasion, MCL 750.110a(2), unarmed robbery, MCL 750.530, and assault and battery, MCL 750.81. Dominique is not a party to this appeal.

one jury.[4]  The jury convicted defendant Paschal of unarmed robbery and unlawful imprisonment and convicted defendant Anderson of first-degree home invasion.  The trial court sentenced defendant Paschal to concurrent prison terms of 30 months to 15 years for each of his convictions.  The trial court originally sentenced defendant Anderson to a prison term of 72 months to 20 years for his home-invasion conviction, but later resentenced him to a reduced term of 42 months to 20 years.  These appeals followed.

## I.  DOCKET NO. 337625

In his only issue on appeal, defendant Paschal argues that the prosecution presented insufficient evidence to support his convictions of unarmed robbery and unlawful imprisonment.  Challenges to the sufficiency of the evidence are reviewed de novo.  *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016).  We must determine if, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find that the prosecution proved each essential element of the crime beyond a reasonable doubt.  *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).  "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences."  *People v Flick*, 487 Mich 1, 24-25; 790 NW2d 295 (2010) (internal citation and quotation marks omitted).  A trier of fact may consider circumstantial evidence and all reasonable inferences that evidence creates.  *Solloway*, 316 Mich App at 180-181.

## A.  UNARMED ROBBERY

"To be guilty of unarmed robbery, a defendant must (1) feloniously take the property of another, (2) by force or violence or assault or putting in fear, and (3) be unarmed."  *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010).  Defendant Paschal argues that he could not be convicted of robbery because the debit card taken from Taliaferro was not Taliaferro's own property, but instead belonged to Gloria.  We disagree.  The victim's ownership of the stolen property is not an element of unarmed robbery.  Against a wrongdoer, the victim's "actual possession or custody of the goods [is] sufficient."  *People v Cabassa*, 249 Mich 543, 547; 229 NW 442 (1930) (internal citation and quotation marks omitted); see also *People v Wakeford*, 418 Mich 95, 131; 341 NW2d 68 (1983).  Here, Taliaferro testified that Gloria gave him the debit card so that he could make purchases for the apartment they shared.  This possession is sufficient against defendant Paschal.[5]

Defendant Paschal also argues that the prosecution presented insufficient evidence to show that he assaulted Taliaferro.  Again, we disagree.  According to Taliaferro, defendant

---

[4] Dominique was also tried before the same jury, which found her guilty of the aforementioned crimes.  See *supra* n 2.

[5] We note that Taliaferro also testified that the intruders stole cigarettes and money from him.  The theft of these items was sufficient to convict defendant Paschal of unarmed robbery apart from the theft of the debit card.

Paschal pointed a pistol at Taliaferro's head and threatened him just before Taliaferro was knocked down to the floor and beaten by all four intruders. Taliaferro testified that defendant Paschal held him as defendant Anderson went through his pockets and removed the cigarettes and cash. Although there was conflicting testimony regarding the pistol, the evidence was sufficient to show that defendant Paschal assaulted Taliaferro, after which Taliaferro turned over the debit card to defendant Paschal and his accomplices. Accordingly, the evidence was sufficient to support defendant Paschal's conviction of unarmed robbery.

## B. UNLAWFUL IMPRISONMENT

MCL 750.349b defines the offense of unlawful imprisonment as follows:

(1) A person commits the crime of unlawful imprisonment if he or she knowingly restrains another person under any of the following circumstances:

(a) The person is restrained by means of a weapon or dangerous instrument.

(b) The restrained person was secretly confined.

(c) The person was restrained to facilitate the commission of another felony or to facilitate flight after commission of another felony.

A person is restrained within the meaning of this statute when the person is forcibly confined "so as to interfere with that person's liberty without that person's consent or without lawful authority." MCL 750.349b(3)(a). The "essence of 'secret confinement' as contemplated by the statute is deprivation of the assistance of others by virtue of the victim's inability to communicate his predicament." *People v Bosca*, 310 Mich App 1, 19; 871 NW2d 307 (2015) (internal citation and block notation omitted).

Smith testified that defendant Paschal physically blocked her and her daughter from leaving the apartment. Given the evidence that defendant Paschal and his accomplices were in the midst of assaulting and robbing Taliaferro, the jury could have reasonably inferred that defendant Paschal restrained Smith and her daughter to prevent them from seeking the assistance of others who would have intervened to thwart the assault and robbery. Indeed, according to Smith, Paschal admitted as much when he told her that she was not going to leave the apartment because she would call the police. The evidence was sufficient to convict defendant Paschal of unlawful imprisonment.

## II. DOCKET NO. 337631

## A. GREAT WEIGHT OF THE EVIDENCE

On appeal, defendant Anderson first argues that the jury's verdict is against the great weight of the evidence. "A verdict is against the great weight of the evidence and a new trial should be granted when the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *Solloway*, 316 Mich App at 182-183 (internal citation and quotation marks omitted). "Generally, a verdict may only be vacated when

the verdict is not reasonably supported by the evidence, but rather it is more likely attributable to factors outside the record, such as passion, prejudice, sympathy, or other extraneous considerations." *Id*. at 183 (internal citation and quotation marks omitted). This Court must defer to the jury's credibility determinations. *People v Anderson*, 322 Mich App 622, 632; 912 NW2d 607 (2018). Conflicting testimony is insufficient to grant a new trial unless the testimony was so far impeached that it was deprived of all probative value, the testimony contradicts indisputable facts or physical realities, or the testimony was so patently incredible that a reasonable jury could not believe it. *Id*.; *Solloway*, 316 Mich App at 183.

Defendant Anderson was convicted of first-degree home invasion, which required the prosecutor to prove that defendant Anderson (1) either broke into and entered Taliaferro's apartment or entered the apartment without permission, (2) with the intent to commit a felony (3) while Taliaferro was lawfully present there. MCL 750.110a(2). Although defendant Anderson had previously been allowed to stay at Taliaferro's apartment, Taliaferro testified that defendant Anderson had no permission to be in the apartment at the time of the offense. Moreover, Taliaferro testified that defendant Anderson entered the apartment along with the three accomplices to assault him and steal his property. Despite defense counsel's attempts at impeachment, the jury's verdict indicates that it credited Taliaferro's testimony. We conclude that the testimony was not so incredible that a reasonable jury could not credit it. Indeed, Smith, who attempted to come to Taliaferro's aid during the commission of the crime, corroborated portions of Taliaferro's testimony.

Defendant Anderson argues that the jury's verdict is against the great weight of the evidence because he had a claim of right to the debit card. Therefore, according to defendant Anderson, he could not have committed a felony in the apartment (or have the intent to do so) because he was taking property that he believed he had a right to. We disagree. To raise a claim-of-right defense, the defendant must claim a *personal* right to the property at issue. See M Crim JI 7.5; *People v Cain*, 238 Mich App 95, 118-119; 605 NW2d 28 (1999). The testimony showed that the debit card belonged to Gloria and defendant Anderson has not otherwise shown that he had any reasonable claim to it. A claim-of-right defense was not available to defendant.

Finally, defendant Anderson argues that his conviction is against the great weight of the evidence because the jury reached a compromise verdict. According to defendant Anderson, a rational jury could not find him guilty of home invasion while finding him not guilty of the felonies allegedly committed therein (unarmed robbery and assault and battery). Again, we disagree. First, juries are permitted to reach inconsistent verdicts, which appellate courts generally will not disturb. See *People v Davis*, 320 Mich App 484, 491-493; 905 NW2d 482 (2017); *People v Putman*, 309 Mich App 240, 251; 870 NW2d 593 (2015). Moreover, to convict a defendant of first-degree home invasion, the jury need only find that the defendant *intended* to commit a felony when he unlawfully entered the residence. MCL 750.110a(2). A rational view of the jury's verdict here indicates that the jury found that defendant Anderson entered the apartment intending to commit an assault and battery and/or unarmed robbery, but, for whatever reason, did not actually commit those crimes while inside.

B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant Anderson next argues that he was unconstitutionally deprived of the effective assistance of counsel. A defendant requesting reversal of an otherwise valid conviction bears the burden of proving "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

To prove the first prong, "[t]he defendant must overcome a strong presumption that counsel's assistance constituted sound trial strategy." *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994). In essence, the defendant bears the burden of showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Counsel is not ineffective for failing to make a futile motion. *Sabin*, 242 Mich App at 660. Regarding the second prong, a defendant is prejudiced if there is a reasonable probability that, "but for defense counsel's errors, the result of the proceeding would have been different." *People v Heft*, 299 Mich App 69, 81; 829 NW2d 266 (2012).

Part of defense counsel's strategy at trial was to argue that defendant Anderson could not have committed a home invasion because he had been staying at Taliaferro's apartment and had permission to be there. Defendant Anderson does not argue that this strategy was unreasonable; rather, defendant Anderson argues that it was not effectively executed.

At trial, evidence was presented that defendant Anderson applied for a state identification card a few months before the offense and that the Secretary of State issued an identification card to him that listed Taliaferro's apartment as defendant Anderson's address. Taliaferro testified, however, that he had accompanied defendant Anderson to the Secretary of State's office and told him that he was not permitted to use Taliaferro's address on the card. Taliaferro explained that he later discovered that defendant Anderson had used his address when the identification card was mailed to his apartment. Taliaferro testified that he turned the identification card over to the police because he had not authorized defendant Anderson to use his address on the card. Nonetheless, Taliaferro admitted that the Secretary of State visit took place before he kicked defendant Anderson out of the apartment.

1. SECRETARY OF STATE RECORDS

On appeal, defendant Anderson argues that defense counsel did not effectively impeach Taliaferro's testimony regarding the Secretary of State visit. Defendant Anderson's principal complaint is that defense counsel failed to offer records from the Secretary of State indicating the date of the address change. Defendant Anderson, however, has not explained how this evidence

would have supported his argument that he had permission to enter the apartment on the date of the offense or how this evidence would have otherwise helped his case. Indeed, Taliaferro testified that he did not kick defendant Anderson out of his apartment until *after* the visit to the Secretary of State office. Moreover, defendant Anderson has not provided this Court with any evidence showing that the address change did not occur when Taliaferro said it did. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009) (internal citation and quotation marks omitted). Defendant Anderson's argument is without merit.

### 2. OTHER ADDRESS-CHANGE EVIDENCE

Defendant Anderson argues that defense counsel was ineffective for not offering evidence of other pieces of mail addressed to defendant Anderson at Taliaferro's apartment and for not calling Taliaferro's cousin as a witness. We disagree. It is not disputed that defendant Anderson was previously permitted to stay at Taliaferro's apartment and that defendant Anderson's identification card listed Taliaferro's address as his residence. Thus, there is no reasonable probability that evidence of other pieces of mail addressed to defendant Anderson at the apartment address would have affected the outcome of the trial. Moreover, defendant Anderson has not presented this Court with any indication as to what testimony his cousin would have offered. Thus, defendant Anderson has not established the factual predicate for his argument that counsel was ineffective for failing to call defendant Anderson's cousin as a witness. *People v Ackerman*, 257 Mich App 434, 455-456; 669 NW2d 818 (2003).

### 3. DEFENDANT ANDERSON'S MOTHER

Defendant Anderson next argues that counsel was ineffective for not calling Gloria as a witness. Defense counsel indicated on the record that he intended to call Gloria as a witness but she did not appear for trial, despite her assurances that she would do so. Defense counsel moved for a brief adjournment to secure her attendance at trial, explaining that Gloria would testify that there were nights when defendant Anderson had her permission to stay in the apartment. The trial court denied the request.

On appeal, defendant Anderson argues that defense counsel should have requested a subpoena to secure Gloria's presence at trial. Yet, the record indicates that Gloria assured defense counsel that she would be at trial. Defendant Anderson has not provided this Court with any evidence to suggest that counsel's reliance on Gloria's assurance was unreasonable. Thus, defendant Anderson has not shown that defense counsel was ineffective for failing to request a subpoena for Gloria.

### 4. DEFENDANT ANDERSON'S PAROLE

Defendant Anderson also faults his counsel for not presenting evidence that defendant Anderson was on parole at the time of the offense and that, as part of his parole release, Taliaferro's apartment was listed as an approved residence. Defense counsel moved *in limine* to preclude the prosecutor from presenting evidence of defendant Anderson's parole status, arguing

that the fact that defendant Anderson was on parole could prejudice the jury against him. The trial court precluded the prosecutor from offering evidence of defendant Anderson's parole status in its case in chief. Nonetheless, the trial court ruled that, in the event that defendant Anderson claimed a right to be in the apartment, the prosecution could present evidence of an order issued by the Department of Corrections after defendant Anderson's release that precluded defendant Anderson from having contact with Taliaferro. Defendant Anderson did not testify at trial and no evidence was offered regarding his parole or the no-contact order.

The record shows that counsel made a strategic choice to forego offering evidence of defendant Anderson's parole to avoid prejudicing the jury with implications of defendant Anderson's prior criminal activity. This choice is exactly the type of trial decision that this Court will not second guess on appeal. This is especially true here, given that the no-contact order was available as impeachment evidence. If defense counsel had sought to introduce evidence that Taliaferro's apartment was listed as an approved residence for defendant Anderson at the time of his parole release, the prosecutor could have introduced the no-contact order as evidence that Taliaferro had revoked defendant Anderson's permission to be at the apartment. Therefore, the original conditions of defendant Anderson's parole were of little evidentiary benefit to defendant Anderson.[6] Given the criminal implications that defendant's parole status carried, defense counsel's strategy to avoid the issue altogether was sound.

## 5. JURY INSTRUCTIONS

Next, defendant Anderson argues that defense counsel was ineffective for not requesting a special jury instruction advising the jury that defendant Anderson could not be convicted of home invasion if he had a right to be in the apartment and that the prosecutor was required to prove beyond a reasonable doubt that defendant Anderson was not allowed to be there on the date of the offense. We disagree. Even assuming that a special instruction would have been appropriate, the trial court's instructions were sufficient to inform the jury that defendant Anderson could not be found guilty of home invasion if he had permission to be in the residence.

Defendant Anderson further argues that counsel was ineffective for not requesting an instruction on the lesser-included offense of entering without the owner's permission, MCL 750.115. Yet, defendant Anderson's theory at trial was that he had permission to be in Taliaferro's apartment at the time of the offense. An instruction consistent with MCL 750.115 would have been inconsistent with this theory. Thus, defense counsel's decision not to request the instruction was sound trial strategy.

---

[6] Defendant Anderson points out that the no-contact order did not reference Taliaferro's apartment. We fail to see the significance of this argument. The no-contact order indicated that defendant Anderson could not be in contact with Taliaferro, implying that defendant Anderson was not to be at Taliaferro's apartment while Taliaferro was there.

## 6. CLAIM-OF-RIGHT DEFENSE

Next, defendant Anderson argues that defense counsel was ineffective for failing to present a claim-of-right defense. According to defendant Anderson, because he believed he had a right to the debit card, he could not have intended to commit the felony of unarmed robbery when he entered the apartment. We disagree. As already discussed, a claim or right defense must be predicated on the defendant's good-faith belief that he has a legal right to the property at issue. See *Cain*, 238 Mich App at 118-119. The record shows that, at most, defendant Anderson believed that Taliaferro improperly possessed *Gloria's* debit card. Defendant Anderson has not presented any evidence that Gloria had given him permission to possess the debit card. Thus, defendant Anderson has presented no evidence indicating that he had a good-faith belief that he had a legal right to the debit card. Thus, a claim-of-right defense was not available to defendant.

## 7. PRELIMINARY EXAM

Finally, defendant Anderson argues that defense counsel was ineffective for not filing a motion to dismiss on the basis that the preliminary examination was not timely held after his arraignment in district court. The remedy for an improper delay in holding the preliminary examination is dismissal without prejudice, following which the prosecution may refile the charges. See *People v Crawford*, 429 Mich 151, 161; 414 NW2d 360 (1987); *People v Weston*, 413 Mich 371, 376; 319 NW2d 537 (1982). Here, the record indicates that the district court attempted to hold a timely preliminary exam. Nevertheless, on several occasions, defendant was not transported to the court from the Detroit Reentry Center. Thus, defense counsel agreed to a preliminary-exam date outside of the timeframe set forth by MCL 766.4. While defense counsel could have asserted the alleged error and possibly could have procured the temporary dismissal of defendant Anderson's charges, it is likely that the prosecution would have refiled the charges. Thus, it appears that defense counsel made the strategic choice to relinquish the error so as not to delay the ultimate resolution of defendant Anderson's case. Defendant Anderson has not shown that this strategy was unreasonable. Moreover, given that the remedy for a timely asserted claim under MCL 766.4 is dismissal without prejudice, defendant Anderson cannot show that a different result would have been likely had defense counsel asserted the error.[7]

Therefore, we reject defendant Anderson's claims of ineffective assistance of counsel. To the extent that defendant Anderson requests that this case be remanded for an evidentiary hearing[8] on his claims, because he has not shown any likelihood of developing a factual record

---

[7] We note that this is not a case where, following dismissal of the charges without prejudice, the defendant was likely to be released from his confinement. Rather, defendant Anderson was subject to a parole hold authorizing his detention. Indeed, defendant Anderson indicated at his circuit court arraignment that he wished to be transferred to prison so that he could address the parole violation.

[8] See *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

on remand to support his claims, remand is not warranted.[9]  See *People v McMillan*, 213 Mich App 134, 141-142; 539 NW2d 553 (1995).

## C.  SENTENCING GUIDELINES

In his brief on appeal, defendant Anderson sought resentencing because of errors in the scoring of the sentencing guidelines.  After defendant Anderson filed his brief, this Court granted his motion to remand to allow him to file a motion for resentencing.[10]  On remand, the trial court granted defendant Anderson's motion, rescored the sentencing guidelines, and resentenced him to a prison term within the appropriate sentencing guidelines.  Defendant Anderson did not subsequently withdraw his appellate claim; however, because defendant Anderson has already received the relief he requested—and does not argue that any error occurred on resentencing—no further relief is warranted with respect to this issue.

Affirmed.

/s/ Anica Letica
/s/ Mark J. Cavanagh
/s/ Patrick M. Meter

---

[9] We note that this Court has already denied defendant's motion to remand for an evidentiary hearing on the issue of ineffective assistance of counsel.  *People v Anderson*, unpublished order of the Court of Appeals, issued December 19, 2017 (Docket No. 337631).

[10] *People v Anderson*, unpublished order of the Court of Appeals, entered December 19, 2017 (Docket No. 337631).