*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

V

MARQUIS DESHAUNE JENKINS,

        Defendant-Appellant.

UNPUBLISHED
May 20, 2021

No. 351524
Kent Circuit Court
LC No. 19-000294-FH

Before: MARKEY, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Defendant Marquis Deshaune Jenkins appeals by right his jury trial conviction of first-degree home invasion, MCL 750.110a(2). He was sentenced to 132 months to 50 years' imprisonment for the conviction. We affirm defendant's conviction and sentence, but we remand to the trial court for the ministerial task of correcting the presentence investigation report (PSIR).

This case arises out of a home invasion in which the victim, a grandmother, was assaulted when defendant made forcible entry into her home. On December 12, 2018, the victim was at her home along with 12 other family members, friends, and acquaintances, not including defendant. Defendant arrived and visited at the home in the afternoon, but he left later that afternoon following an incident that resulted in the victim's not wanting him in her home. He was not invited back. When defendant was unable to stay at a local shelter as planned, he returned to the victim's home at approximately 1:30 a.m. Defendant knocked on the door of the home, and when the victim was unable to see anyone through the peephole, she cracked the door open approximately three inches. The victim saw defendant and told him that he could not come inside. The victim testified that defendant then "came barreling through the front door and shoved [her] back onto the couch." She indicated that the door hit her first and then defendant "came at [her]." The victim asserted that defendant plowed through the front door with unexpected force. There were a number of eyewitnesses who testified at trial that defendant pushed the door open, which threw the victim backward, and/or that defendant shoved the victim after he had burst into the home. All of the eyewitnesses to the assault indicated that defendant was not invited into the house and that the victim looked scared when defendant came through the front door.

The victim then ran upstairs to get her phone, and she told a friend to lock herself in a bedroom with the friend's three children. The victim locked herself in a bathroom and called 911. When the police arrived, defendant went to the front door. An officer commanded defendant to come outside with his hands up, but defendant instead ran to the home's back door. Other police officers, however, were already stationed at the back door; consequently, defendant ran upstairs to a bedroom in which there were two children. Defendant had lain down on a bed with one of the children and told them to pretend that he was asleep. Officers entered the home and found defendant in the bedroom on the bed. After a struggle, the police subdued and arrested him. Defendant testified on his own behalf and asserted that he did not assault or batter the victim in any form or fashion. The jury convicted defendant of first-degree home invasion.

At the sentencing hearing, the prosecutor indicated that he had no additions or corrections to the PSIR, which included the sentencing information report showing the scoring of the guidelines by a probation officer. The trial court then asked defense counsel whether he had reviewed the PSIR, and counsel replied in the affirmative. On further query by the court, defense counsel stated that there were no objections to the PSIR. Defendant himself then interjected with objections regarding the accuracy of the information about his criminal history found in the PSIR. After some discussion concerning defendant's criminal record and the impact on the scoring of the prior record variables (PRVs), along with a brief adjournment for the court to verify information, the trial court struck or decided not to consider some of defendant's past listed offenses while also confirming convictions on other listed offenses. Ultimately, defendant remained at PRV Level F—the highest level. See MCL 777.63 (sentencing grid for Class B offenses such as first-degree home invasion, MCL 777.16f). Additionally, the trial court agreed to strike language in the PSIR with respect to an alleged sexual assault defendant committed during the home invasion. The trial court noted that defendant was not charged with the sexual assault and that the court had excluded evidence on that incident at the trial. The prosecutor agreed to strike the sexual assault language. On our review of the PSIR, we note, however, that the language has not been redacted as agreed upon; this forms the basis of one of defendant's arguments on appeal. With regard to the offense variables (OVs), defendant was assessed 25 points for OV 9, MCL 777.39(1)(b) ("10 or more victims who were placed in danger of physical injury or death"). The remaining OVs were assessed zero points, and defendant's total OV score of 25 points placed him at OV Level III on the grid for Class B offenses. MCL 777.63. Defendant did not challenge the scoring of OV 9 at sentencing, in a motion for resentencing, or in a motion to remand. But he does argue on appeal that OV 9 should have been assessed 10 points at most on the basis of "2 to 9 victims" being placed in danger, MCL 777.39(1)(c), which would alter the OV level and guidelines range.

There is another aspect of the sentencing that we feel compelled to discuss. We begin with a little background information to give context to our discussion. The PSIR indicated that on March 30, 2018, more than eight months before defendant committed the home invasion, defendant engaged in conduct that led to the following four charges: unarmed robbery, resisting and obstructing an officer, possession of marijuana, and attempted larceny in a building. There was also a fourth-offense habitual offender notice. According to the PSIR, defendant pleaded guilty on October 25, 2018, to resisting and obstructing an officer and attempted larceny in a building. It appears that the habitual offender notice was dismissed under the plea along with the unarmed robbery and marijuana charges. Defendant was sentenced on December 10, 2018, in that case, which was a couple of days before the home invasion occurred.

-2-

The PSIR indicated on page 1 that defendant was convicted by a jury of first-degree home invasion. But just below that information, the PSIR stated: "In exchange for his plea Ct 4 Habitual Offender 4th was dismissed." Here, there was no plea, nor was there a Count 4. The reference appears to have pertained to the prior case against defendant. In preparing the sentencing information report with the scored OVs and PRVs, the probation agent stated on the form that there was no habitual enhancement, and indeed the applied guidelines range of 84 to 140 months' imprisonment reflected no habitual enhancement. See MCL 777.63 (PRV Level F; OV Level III). The amended felony information, however, contained a charge of first-degree home invasion and a fourth-offense habitual offender notice, identifying as the three underlying felonies the October 2018 plea-based convictions of attempted larceny in a building and resisting and obstructing an officer and a plea-based conviction from February 2018 for attempted fleeing and eluding.

The judgment of sentence and an amended judgment of sentence both indicated that defendant was found "guilty" of being a fourth-offense habitual offender.[1] At the sentencing hearing, the trial court noted that "[t]he crime in question is home invasion in the first degree *as a fourth habitual offender*." (Emphasis added.) But the court then found that "[t]he sentencing guidelines call for a minimum sentence of 84 to 140 months[,]" which was the guidelines range absent any habitual enhancement, and the court imposed a minimum sentence of 132 months. For a fourth-offense habitual offender under the grid for a Class B offense, PRV Level F and OV Level III, the minimum sentence range is 84 to 280 months. See MCL 777.21(3)(c) (increasing the upper limit of the minimum sentence range for fourth habitual offenders by 100%). The prosecution raised no issue on the matter at sentencing and has not even filed a brief on appeal. Defendant, however, seeks resentencing on the assertion that OV 9 was improperly assessed 25 points.

On appeal, defendant first argues that there was insufficient evidence to support the conviction for first-degree home invasion. The charge of first-degree home invasion was premised on the theory that defendant broke into the victim's dwelling or entered without permission with people present inside the home and committed an "assault" against the victim while entering or inside the home. See MCL 750.110a(2). Defendant contends "that the evidence was insufficient to show an assault because there was no evidence that he committed any act with the intent to injure or to place anyone in apprehension of an immediate battery." Defendant notes that the Legislature used the term "assault" in MCL 750.110a(2), absent any reference to a "battery." Therefore, according to defendant, a misdemeanor battery committed in the process of a home invasion does not elevate the crime to first-degree home invasion.

In *People v Kenny*, 332 Mich App 394; 956 NW2d 562 (2020), this Court discussed the principles governing a sufficiency argument and the establishment of intent, observing as follows:

> This Court reviews de novo whether there was sufficient evidence to support a conviction. In reviewing the sufficiency of the evidence, this Court must

---

[1] The original judgment of sentence indicated that defendant had been found guilty *by plea* of first-degree home invasion and being a fourth-offense habitual offender. The amended judgment of sentence reflected that defendant was convicted by a jury of first-degree home invasion and that the court found that defendant was a fourth-offense habitual offender.

view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. Circumstantial evidence and any reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime. The prosecution need not negate every reasonable theory of innocence; it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. All conflicts in the evidence must be resolved in favor of the prosecution. The element of intent may be inferred from circumstantial evidence. Because it can be difficult to prove a defendant's state of mind on issues such as intent, minimal circumstantial evidence suffices to establish a defendant's state of mind. A defendant's intent can be gleaned or inferred from his or her actions. [Quotation marks and citations omitted.]

"[A]ssault is an underlying crime that elevates a home invasion to first-degree home invasion," and MCL 750.110a(2) does not specify "any particular type of assault." *People v Sands*, 261 Mich App 158, 163; 680 NW2d 500 (2004). A misdemeanor assault can constitute the crime underlying first-degree home invasion. *Id*.

In *People v Nickens*, 470 Mich 622, 628; 685 NW2d 657 (2004), our Supreme Court explained the crimes of assault and battery and their interrelationship:

An assault is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery. The first type is referred to as an "attempted-battery assault," whereas the second is referred to as an "apprehension-type assault." As such, an assault can occur in one of two ways.

Moreover, a battery is an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person. Therefore, a battery is the successful accomplishment of an attempted-battery assault. When we speak of an assault we usually have in mind a battery which was attempted or threatened. The attempt may have failed or it may have succeeded. If it failed it constitutes an assault only. If it succeeded it is an assault and battery. Stated differently, an attempted-battery assault is a necessarily lesser included offense of a completed battery because *it is impossible to commit a battery without first committing an attempted-battery assault*. [Quotation marks, citations, and brackets omitted; emphasis added.]

"For assault and battery, intent is an element of the crime to be proved." *People v Terry*, 217 Mich App 660, 662; 553 NW2d 23 (1996). M Crim JI 17.1(3), which instruction defines "assault," provides in part that it must be shown that "the defendant intended either to commit a battery . . . or to make [a person] reasonably fear an immediate battery." In this case, defendant accepts the latter proposition in M Crim JI 17.1 on intent, but he also contends that with respect to

attempted-battery assault there must be an " 'intent to injure,' " quoting *People v Johnson*, 407 Mich 196, 210; 284 NW2d 718 (1979), as opposed to the mere intent to commit a battery. *Johnson*, however, concerned the elements of felonious assault. *Id.* at 209-210. And felonious assault does require proof of an intent to injure. See *People v Nix*, 301 Mich App 195, 205; 836 NW2d 224 (2013); M Crim JI 17.9(3). In a recent Supreme Court order, the Court indicated that "the intent necessary for assault and battery" is that the defendant "either intended to commit a battery upon . . . [the victim] or intended to make her reasonably fear an immediate battery." *People v Haynie*, 505 Mich 1096 (2020). Accordingly, the prosecution here was not required to prove that defendant intended to "injure" the victim. We also note that "the lack of physical injury [is] irrelevant." *Terry*, 217 Mich App at 663.

Viewing the evidence in a light most favorable to the prosecution, deferring to the jury's assessment of credibility and the weight of the evidence, and resolving all conflicts in the evidence in favor of the prosecution, we hold that there was sufficient evidence to establish that defendant assaulted the victim. There was evidence that after the victim declined to allow defendant to enter the home, he pushed the door open with great force, knocking the victim backward. There was also evidence that defendant directly pushed the victim after making entry. Although there was a battery under either circumstance, it was impossible for defendant to have committed the batteries without having first committed attempted-battery assaults. See *Nickens*, 470 Mich at 628. Additionally, the victim testified that after the door hit her, defendant "came at [her]." Witnesses also indicated that the victim looked scared. Accordingly, there was evidence that defendant engaged in an unlawful act that placed the victim in reasonable apprehension of receiving an immediate battery, i.e., an apprehension-type assault. Thus, there was sufficient evidence of the two types of assault discussed in *Nickens* for purposes of the "assault" element in MCL 750.110a(2) under the prosecution's theory of the case.

With respect to intent, we note there was evidence that although the victim told defendant *at the partially-opened door* that he could not enter the home, defendant immediately barreled through the door. Under these circumstances, a juror could have reasonably inferred that defendant was fully aware that forcefully pushing the door open would knock the victim backward, thereby establishing his intent to commit a battery against her.[2] And to the extent that defendant came at the victim and directly pushed her after gaining entry to the home, the surrounding circumstances easily supported a conclusion that defendant intended to batter the victim. But there is a problem concerning intent that we must address. The trial court did not instruct the jury on the element of intent relative to the law of assault. As discussed later in this opinion in relation to a Standard 4 argument, we conclude that defendant waived an instructional challenge based on the court's failure to instruct on intent. We are therefore faced with a sufficiency argument on an element of the crime upon which the jury never deliberated. Again, there was more than sufficient evidence of an intent to commit a battery, and it was unnecessary to prove an intent to injure. We are not prepared to reverse the conviction on a sufficiency argument with respect to intent where defendant voiced complete approval of instructions that did not contain an intent element and where there

---

[2] We do believe, contrary to defendant's argument, that the same evidence would support an inference that defendant intended to *injure* the victim, although, as explained earlier, no such proof was required to convict defendant.

was sufficient evidence of intent. We later address why reversal is not automatically mandated for omitting an instruction on an element of the offense.

Defendant next argues that he is entitled to resentencing because the trial court improperly assessed 25 points for OV 9. We conclude that defendant appeared to have waived this issue when counsel stated that he had no objections to the PSIR, which encompassed the sentencing information report containing the scored guidelines. Assuming that this alone was inadequate to establish a waiver, see *People v Hershey*, 303 Mich App 330, 351-353; 844 NW2d 127 (2013), we conclude the waiver becomes clear when after a lengthy discussion regarding defendant's criminal history and the impact on the PRVs, the court asked defense counsel if there were anything more to address before imposing sentence and counsel answered, "No, your Honor." See *People v Kowalski*, 489 Mich 488, 505; 803 NW2d 200 (2011) (waiver occurred when counsel indicated that there was no objection to jury instructions, thereby reflecting express and unequivocal approval of the instructions, and to hold otherwise would allow counsel to harbor error as an appellate parachute).

Moreover, even without a waiver, resentencing is not appropriate even if there were a scoring error that altered the guidelines range. MCL 769.34(10) provides in relevant part:

> If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence. A party shall not raise on appeal an issue challenging the scoring of the sentencing guidelines or challenging the accuracy of information relied upon in determining a sentence that is *within the appropriate guidelines sentence range* unless the party has raised the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals. [Emphasis added.]

Here, the issue regarding the scoring of OV 9 was not raised at sentencing, in a motion for resentencing, or in a motion to remand. In *People v Kimble*, 470 Mich 305, 310-311; 684 NW2d 669 (2004), our Supreme Court, citing MCL 769.34(10), ruled that, "if [a] sentence is within the appropriate guidelines sentence range, it is only appealable if there was a scoring error . . . and the issue was raised at sentencing, in a motion for resentencing, or in a motion to remand."[3] The

---

[3] In *Kimble*, the guidelines range used at sentencing was 225 to 375 months, the minimum sentence imposed was 360 months (within range), and the *appropriate* guidelines range was actually 180 to 300 months (pushing minimum sentence outside the range) after the Supreme Court concluded that OV 16 had been scored incorrectly. The Court held, "Because defendant's sentence is outside the appropriate guidelines sentence range, his sentence is appealable under § 34(10), even though his attorney failed to raise the precise issue at sentencing, in a motion for resentencing, or in a motion to remand." *Kimble*, 470 Mich at 312. But even though the scoring challenge was appealable, the Court reviewed the challenge under the plain-error standard because the defendant had not properly preserved the issue. *Id*.

-6-

question becomes whether the 132-month minimum sentence imposed on defendant fell within the *appropriate* guidelines range. Assuming for the sake of argument that OV 9 should have been assessed 10 points as argued by defendant, the appropriate guidelines range, *as increased by defendant's status as a fourth-offense habitual offender*, would be 78 to 260 months' imprisonment. See MCL 777.63; MCL 777.21(3)(c). Therefore, the 132-month minimum sentence would fall within the *appropriate* guidelines range, and no appeal would be available under MCL 769.34(10) because of the preservation failure. Indeed, even if OV 9 should have been assessed zero points, the appropriate guidelines range would be 72 to 240 months' imprisonment, encompassing the 132-month minimum sentence. Accordingly, we conclude that resentencing is not appropriate.[4]

Defendant next argues that the trial court erred by failing to remove or redact the information about the purported sexual assault referenced in the PSIR. Given that the trial court agreed to strike the information, that the prosecution below agreed that the information should be redacted, and that the prosecution has not presented us with an appellate brief, we remand to the trial court for the ministerial task of correcting the PSIR.

In addition to the issues already addressed, defendant has raised several issues in a Standard 4 brief. First, defendant is not entitled to reversal on the basis that the district court did not timely conduct his preliminary examination, which, after an adjournment, took place about a week later than the timeframe provided in MCL 766.4(1). There could be no due process violation as defendant argues because preliminary examinations are solely statutorial. *People v Hall*, 435 Mich 599, 603; 460 NW2d 520 (1990). Further, defendant is precluded from obtaining appellate review because before the trial he did not file an application for leave to appeal from the court's rejection of his timeliness challenge at the preliminary examination. See *People v Crawford*, 429 Mich 151, 157; 414 NW2d 360 (1987). Moreover, defendant has not shown that good cause for the adjournment did not exist where the district court found that good cause in fact existed to adjourn the preliminary examination because the court's docket was overflowing with 26 scheduled preliminary examinations. *Id.* at 161. Finally, assuming any reviewable error, we find defendant has not shown that the short adjournment affected the bind over and adversely affected the fairness or reliability of the trial itself, both necessarily present to warrant reversal. See *People v McGee*, 258 Mich App 683, 698; 672 NW2d 191 (2003).

Defendant next argues that he was denied the effective assistance of counsel because defense counsel did not object to the victim's testimony as constituting perjury. We disagree. There were some minor inconsistencies on peripheral issues between the victim's trial testimony and her testimony at the preliminary examination and statements to the police. There is no indication of anything more than memory and recollection issues as opposed to perjury, and there

---

[4] We would also note that if there were a resentencing, the trial court would likely increase the minimum sentence even with a change in the OV 9 score in light of the habitual enhancement that was overlooked.

was certainly no proof that the prosecution knowingly used perjured testimony.[5]  Moreover, defense counsel thoroughly cross-examined the victim on the inconsistencies and discrepancies. Defendant has simply failed to establish deficient performance by counsel or the requisite prejudice.  *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001).  Therefore, we conclude that reversal for ineffective assistance of counsel is unwarranted.

Defendant next argues that the prosecution committed misconduct by not providing him with discovery of impeachment evidence, i.e., body camera footage from the responding police officers that was not saved.  We conclude that there was no violation of *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), because defendant has failed to demonstrate that the evidence was favorable to him for exculpatory or impeachment purposes.  See *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014) (discussing *Brady* requirements).  More importantly, and assuming that the evidence could have actually impeached an officer's testimony, any evidence showing interactions between defendant and the police *after the home invasion and assault took place* is simply immaterial.  *Id.* at 150.  The relevant events concerning the only crime charged—first-degree home invasion—had transpired by the time the police arrived, none of whom testified as witnesses to the home invasion and assault, as they were not present.  Moreover, apart from the alleged *Brady* violation but for similar reasons, defendant has not demonstrated that the prosecution violated due process by failing to preserve evidentiary material, the body camera footage, that may have exonerated defendant.  See *People v Hunter*, 201 Mich App 671, 677; 506 NW2d 611 (1993).  Furthermore, there is no evidence that the police or prosecutor acted in bad faith by not saving the body camera footage.  *Id.*

Defendant next argues that he was denied his right to a speedy trial.  We disagree.  The sentencing offense occurred on December 13, 2018.  On March 7, 2019, defendant obtained new counsel.  On April 16, 2019, the trial court ordered defendant to undergo a competency examination, and on April 23, 2019, the trial court scheduled the trial for June 17, 2019.  The trial court held the competency hearing and found that defendant was competent to stand trial.  On May 14, 2019, and June 13, 2019, after the trial court received handwritten motions by defendant to dismiss the case on the basis that his right to a speedy trial had been violated, the trial court adjourned the trial in order to address the motions.  Defendant's trial ultimately began on September 3, 2019, approximately nine months following the sentencing offense.  Because the delays were mostly attributable to defendant and because defendant has not presented us with any relevant and rational argument demonstrating prejudice, we conclude that defendant has not

---

[5] "If a conviction is obtained through the knowing use of perjured testimony, it must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009) (quotation marks and citation omitted).  The defendant has the burden to demonstrate that testimony was "actually false." *People v Bass*, 317 Mich App 241, 274; 893 NW2d 140 (2016).  A party cannot object to testimony "simply because one *thinks* a witness is lying."  *People v Odom*, 276 Mich App 407, 416; 740 NW2d 557 (2007).  Instead, the "veracity of a witness is a matter for the trier of fact to discern." *Id*.

established a speedy-trial violation. See *People v Williams*, 475 Mich 245, 261-262; 716 NW2d 208 (2006).

Finally, as touched on earlier, defendant argues that the trial court failed to instruct the jury that intent was a required element of the first-degree home invasion charge. In this case, defense counsel reviewed the jury instructions and agreed to them before the trial court instructed the jury. After the trial court instructed the jurors, the court confirmed that neither party had any objections to the jury instructions, and defense counsel agreed. Therefore, defendant's claim of instructional error was waived. See *Kowalski*, 489 Mich at 505. But we must continue with the analysis because there was instructional error, and it concerned an element of the offense given that assault supplied the basis to elevate the crime of home invasion to first-degree home invasion.

"Structural error is a concept that has typically been applied to errors of constitutional magnitude, not to statutory errors[.]" *People v Cornell*, 466 Mich 335, 363 n 17; 646 NW2d 127 (2002). The failure to instruct a jury on an element of the offense for which the defendant was convicted is not a structural error subject to automatic reversal. *Id.*, citing *Neder v United States*, 527 US 1, 9; 119 S Ct 1827; 144 L Ed 2d 35 (1999). An instruction that omits an element of the crime does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining the guilt or innocence of the defendant. *Cornell*, 466 Mich at 363 n 17. "[T]he omission of an element is an error that is subject to harmless-error analysis." *Neder*, 527 US at 15. The United States Supreme Court further explained:

> Of course, safeguarding the jury guarantee will often require that a reviewing court conduct a thorough examination of the record. If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error—for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding—it should not find the error harmless. [*Id.* at 19.]

Considering that harmless-error analysis applies in circumstances in which a jury is not instructed on an element of an offense and that the error is not structural, we certainly believe that a defendant can waive an appellate challenge of instructions omitting an element of the crime. In this case, defendant testified on his own behalf, and he later argued to the jury that he walked into the home peacefully and never touched the victim or caused the door to strike the victim. In other words, he claimed that there was no assault or battery, which may have explained why defense counsel was not concerned with instructions on intent; there was no focus or argument on intent. Moreover, there was strong evidence of an intent to commit a battery.[6] Thus, the omission of an instruction on intent to commit a battery or intent to make a person reasonably fear an immediate battery did not render the criminal trial fundamentally unfair or an unreliable vehicle for determining the guilt or innocence of defendant. Reversal is unwarranted.

---

[6] We also note that the court did instruct the jury that an assault entails an "attempt" to commit a battery, which conveys the thought or concept of an intentional act.

We affirm defendant's conviction and sentence, but we remand to the trial court for the ministerial task of correcting the PSIR.  We do not retain jurisdiction.


/s/ Jane E. Markey
/s/ Michael J. Kelly
/s/ Brock A. Swartzle