*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

THOMAS LEE DENOMIE, JR.,

        Defendant-Appellant.

UNPUBLISHED
August 26, 2021

No. 353357
Baraga Circuit Court
LC No. 19-001575-FH

Before: JANSEN, P.J., and M. J. KELLY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, aggravated assault, MCL 750.81a, and assault and battery, MCL 750.81. Defendant was sentenced as a third habitual offender, MCL 769.11, to 9 to 20 years' imprisonment for AWIGBH, and 93 days' imprisonment for both aggravated assault and assault and battery. We affirm.

## I. FACTUAL BACKGROUND

This case arises from a violent incident that occurred on August 7, 2019, between defendant and James Taylor Wood. They were both at a friend's house drinking when they decided to go from Baraga to L'Anse to visit defendant's father, Thomas Lee Denomie, Sr. Waynette Rice drove them. During the ride, Wood jokingly said that defendant was "CI," a confidential informant, or a snitch. Defendant was sitting in the front passenger seat, and he swung back at Wood in the backseat, punching Wood in the nose. Wood apologized, and poked a wooden board forward at defendant to defend himself. Rice pulled over into a grocery store parking lot, and defendant chased Wood around the car until Rice and Wood went into the store, and defendant walked away. Rice and Wood exited the store, and went to Denomie Sr.'s house.

Rice and Wood were outside talking to Denomie Sr. when defendant arrived. He had gotten a ride from Randy Morin, who had his girlfriend, Hanna Frechen, and children in the car. Wood stood with his back to defendant. Defendant said, "Now you're snitching to my dad," while walking toward Wood, and as soon as defendant got around a fence near the home, he hit Wood without warning in the back of the head or side of his face. Wood fell to the ground after the first

-1-

hit, but defendant continued to attack, throwing several punches and at least one to two kicks to Wood's head and face. Wood begged defendant to stop, and then became motionless. Defendant would stop, stand up, scream obscenities at Wood, and then bend down and continuing hitting him. Rice was yelling at defendant to stop, and defendant told her to shut up, or he would do the same thing to her. Wood had a giant cut across his forehead, with multiple other cuts and abrasions across his face, and a severely swollen-shut eye.

Morin exited his vehicle to intervene, and defendant became aggressive with Morin. Morin threw the first punch at defendant, and they wrestled each other to the ground. Defendant bit Morin's pinky finger so hard that Morin threatened to poke defendant's eye out to get him to let go. Morin and Rice both testified that had Morin not stepped in, Wood would have been killed. Morin and his family then left. During defendant and Morin's scuffle, Rice managed to get Wood to their vehicle and took him to the hospital. He received approximately 23 to 26 stitches for the cuts on his face. Officer Daniel Perrault with the L'Anse Village Police Department reported to the hospital, and interviewed Wood and Rice. He then went to Denomie Sr.'s house, and spoke to him, his girlfriend, and defendant. He put defendant under arrest. He later interviewed Morin and Frechen.

Defendant was charged with one count of AWIGBH less than murder as to Wood, one count of aggravated assault as to Morin, and one count of assault and battery as to Rice. After a two-day jury trial, he was convicted of all three counts.

## II. SUBSTITUTION OF COUNSEL

Defendant argues in his Standard 4 brief that the trial court abused its discretion by denying his request for substitution of counsel before trial because his court-appointed attorney, Keith W. DeForge, had an alleged conflict of interest. Defendant argues in his brief on appeal that the trial court abused its discretion by denying his request for substitution of counsel at sentencing because of a breakdown in the attorney-client relationship. We disagree.

This Court reviews a trial court's decision regarding substitution of counsel for an abuse of discretion. *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *Id*.

The Sixth Amendment of the United States Constitution guarantees a criminal defendant's right to counsel. US Const, Am VI. When a defendant asserts that his attorney is inadequate, not diligent, or disinterested, the court should hear the defendant's claim and take testimony if there are factual disputes, and state its findings and conclusions on the record. *Strickland*, 293 Mich App at 397.

> An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause exists where a legitimate

difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic. [*Id*. (quotation marks and citations omitted).]

"A mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause." *Id*. at 398. "Likewise, a defendant's general unhappiness with counsel's representation is insufficient." *Id*.

As an initial matter, the trial court did not abuse its discretion in denying defendant's request for substitution of counsel where defendant had already had one court-appointed attorney dismissed, and replaced with DeForge, based on a breakdown of the attorney-client relationship. Defendant moved to substitute his first court-appointed attorney, Cameron Harrington, because of a breakdown in the attorney-client relationship. Harrington moved to permit defendant to proceed pro se because defendant had or intended to file a grievance against Harrington, and believed the attorney-client relationship was irreparably damaged. The court substituted Harrington with DeForge. Thus, it was not outside the range of reasonable and principled outcomes when the court denied defendant's additional request for substitution of counsel, based in part on the same reasoning—defendant filing or threatening to file a grievance against DeForge.

The trial court did not abuse its discretion by denying defendant's request for substitute counsel before trial or at sentencing because defendant did not establish good cause. It was established that DeForge served as the guardian ad litem (GAL) of the children of defendant's sister, resulting in a termination of the sister's parental rights. The trial court correctly determined that this did not establish a conflict of interest precluding DeForge from effectively serving as defendant's trial counsel. DeForge represented the sister's children, not defendant's sister, in a case completely separate from the case at hand. DeForge's duty to vigorously represent the sister's children in that case did not affect his duty to vigorously represent defendant in this separate criminal matter. See MRPC 1.7, 1.9. Viewing defendant's request for substitution of counsel because of DeForge's involvement in a separate case regarding defendant's family is nothing more than a claim that defendant lacked confidence in his appointed counsel; this is insufficient to establish good cause for substitution of counsel. See *People v Traylor*, 245 Mich App 460, 463; 628 NW2d 120 (2001).

Furthermore, "[a] defendant may not purposely break down the attorney-client relationship by refusing to cooperate with his assigned attorney and then argue that there is good cause for a substitution of counsel." *People v Meyers (On Remand)*, 124 Mich App 148, 166-167; 335 NW2d 189 (1983). In defendant's second motion for substitution of counsel, seeking to substitute DeForge before trial, defendant stated that he would "not work with him in anyway [sic] or form." At the pretrial hearing on this motion, DeForge assured the trial court that he could uphold his duty to effectively represent defendant, but he needed defendant's cooperation. Thus, it was not an abuse of discretion for the trial court to deny defendant's pretrial request for substitution of counsel when he had been refusing to cooperate with DeForge. *Id*.

In defendant's pro se motion for a new trial, defendant argued that DeForge would not submit allegedly favorable evidence to the jury, refused to file motions, and misled defendant to believe that he would not be convicted of a felony. However, "[c]ounsel's decisions about defense strategy, including what evidence to present and what arguments to make, are matters of trial strategy, and disagreements with regard to trial strategy or professional judgment do not warrant

appointment of substitute counsel." *Strickland*, 293 Mich App at 398 (footnotes omitted). Thus, it was not an abuse of discretion in this regard for the trial court to deny defendant's request for substitution of counsel posttrial.

Regarding defendant's argument that the trial court abused its discretion by failing to substitute counsel at sentencing, defendant provides in his brief on appeal:

> At sentencing, defendant requested that his counsel be discharged as his attorney and requested the appointment of substitute counsel to represent him. Defendant told the Court that his attorney[] would not discuss certain facts or issues. Defendant told the judge that there was a breakdown in the attorney-client relationship because of a complete disagreement as to strategy. Defendant wanted to put on the record his motion for substitution of counsel and the reasons in detail in support of his motion, but Judge Brennan refused to allow him to do that and denied the motion.

First, DeForge filed his posttrial motion to withdraw as counsel stating the following reasons: (1) defendant filed a grievance against him, (2) defendant did not believe that DeForge adequately represented him, and (3) as a result, there was a breakdown of the attorney-client relationship. The filing of an attorney grievance, without more, has been found by this Court to be an insufficient cause for substitution. *Traylor*, 245 Mich App at 463. Thus, it was not an abuse of discretion for the trial court to deny defendant substitution of counsel based on defendant's attempt to file a grievance against DeForge. *Id.*

Second, defendant's brief on appeal misstates the record from the sentencing hearing. Defendant was not denied the opportunity to discuss substitution of counsel at the hearing. He did not state that DeForge refused to discuss certain facts or issues, or that there was a complete disagreement about strategy. DeForge stated that there was a breakdown of the attorney-client relationship resulting in no communication, and that defendant did or attempted to file a grievance against him. Defendant reasserted that DeForge had a conflict of interest because of his involvement in defendant's sister's abuse and neglect case, and the court disagreed. Thus, defendant did not establish good cause for substitution of counsel at sentencing because he failed to establish a legitimate difference of opinion regarding trial tactic, *Strickland*, 293 Mich App at 397, and the trial court did not abuse its discretion in denying his request for substitution of counsel.

Defendant then stated at sentencing that he did not want to represent himself, but rather, he wanted a new attorney because he believed he had several grounds for a new trial. The court addressed and denied defendant's motion for a new trial thereafter. When a defendant seeks to proceed pro se, the trial court must determine that "(1) the defendant's request is unequivocal, (2) the defendant is asserting his right knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business." *People v Russell*, 471 Mich 182, 190; 684 NW2d 745 (2004). Here, however, defendant did not want to proceed pro se. He said that he wanted another new attorney. Thus, these duties of the trial court to ensure a knowing and voluntary waiver of the right to counsel were not triggered. *Id*. "The right to the assistance of counsel is automatic;

assuming the right is not waived, assistance must be made available at critical stages of a criminal prosecution[.]" *Id*. at 189 n 16. Based on defendant's unequivocal rejection of proceeding pro se, it was proper for the court to keep DeForge on at sentencing in an advisory capacity.

Moreover, "a defendant's conviction will not be set aside . . . if the record does not show that the lawyer assigned to represent [the defendant] was in fact inattentive to his [or her] responsibilities." *People v Buie*, 298 Mich App 50, 67; 825 NW2d 361 (2012). There is no indication from the trial court record that DeForge was inattentive to his responsibilities. He assured the trial court before trial that he would vigorously represent defendant with defendant's cooperation. DeForge remained at sentencing in an advisory capacity after advising the trial court that he did not believe that defendant was capable of representing himself, and defendant said that he did not want to represent himself. Although acting in an advisory manner, DeForge participated in sentencing as defendant's attorney-in-fact. DeForge challenged the scoring of two offense variables (OVs) on defendant's behalf, and argued that defendant should be sentenced at the bottom of the sentencing guidelines because his conduct was more akin to aggravated assault than AWIGBH. Thus, defendant was provided with assistance of counsel at sentencing, and he is not entitled to relief on appeal.

### III. REASONABLENESS OF SENTENCE

Defendant argues that his sentence of 9 to 20 years' imprisonment for AWIGBH was unreasonable and not proportionate because the incident with Wood was more akin to aggravated assault. We disagree.

This Court reviews a trial court's findings of fact for clear error and questions of law de novo when reviewing a sentence. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). This Court reviews the trial court's determination of a reasonable sentence for an abuse of discretion. *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes" or "when it makes an error of law." *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013).

A sentence that violates the principle of proportionality is unreasonable. *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). A sentence must be "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 460 (citation and quotation marks omitted). The "key test" of a reasonable sentence "is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *People v Milbourn*, 435 Mich 630, 661; 461 NW2d 1 (1990), abrogation recognized by *Steanhouse*, 500 Mich at 459-460. However, a sentence that falls within the sentencing guidelines is presumptively proportionate. *People v Odom*, 327 Mich App 297, 315; 933 NW2d 719 (2019). To overcome this presumption of proportionality, "a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Lee*, 243 Mich App 163, 187; 622 NW2d 71 (2000).

Defendant has failed to meet this burden. Defendant was sentenced to 9 to 20 months' imprisonment for AWIGBH less than murder as a third habitual offender. His total prior record variable (PRV) score was 85 points, PRV Level F, and his total OV score was 80 points, OV Level

VI.   As a third habitual offender, the sentencing guidelines range was 43 to 114 months' imprisonment.  See MCL 777.65.  Defendant's minimum sentence of nine years, or 108 months, fell within the guidelines range.  Therefore, defendant's sentence is presumptively proportionate. *Odom*, 327 Mich App at 315.  Defendant argues that he "was only involved in an aggravated assault with [Wood] and terminated the fight when his friend got involved in stopping it," implying that the sentence was not proportionate to the seriousness of this offense.  However, the jury found that the evidence established that defendant was guilty of AWIGBH beyond a reasonable doubt, and found him guilty of AWIGBH instead of the lesser offense of aggravated assault.  Indeed, the evidence established that Wood sustained serious injuries to his face, and witnesses believed that Wood could have been killed had Morin not intervened.  Therefore, it was not an abuse of discretion for the trial court to sentence defendant to a minimum sentence within the statutory guidelines range for AWIGBH, enhanced for a third habitual offender.

Moreover, MCL 769.34(10) provides that "[i]f a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence."  Defendant makes no argument that there was an error in scoring, or that the trial court relied on inaccurate information.  At sentencing, DeForge challenged two OV scores, which defendant does not challenge on appeal, and stated that defendant indicated that there were no factual errors within the PSIR.  Therefore, defendant's sentence for AWIGBH must be affirmed.  MCL 769.34(10).

## IV. WARRANTLESS ARREST

Defendant argues in his Standard 4 brief that police entered his father's home without consent and arrested him without a warrant, and therefore, defendant's convictions and sentences should be reversed.  We conclude that defendant lacked standing to challenge the search and seizure, and the lower court record is insufficient to determine this issue on appeal, but defendant has not met his burden to establish a right to remand.

To be properly preserved for appeal, an issue must be raised, addressed, and decided in the trial court. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Defendant argued in his pro se motion for a new trial that Officer Perrault had no warrant for defendant's arrest, and that Officer Perrault's affidavit of probable cause was never signed by a judge or magistrate.  The trial court did not address this argument when it decided defendant's motion at the sentencing hearing, therefore, the issue is not preserved. *Id*.  However, "if an issue is raised before the trial court and is pursued on appeal, this Court is not foreclosed from reviewing it even if it was not decided by the trial court." *People v Zitka*, 325 Mich App 38, 48; 922 NW2d 696 (2018).

Defendant's unpreserved constitutional issue is reviewed for plain error affecting defendant's substantial rights. *People v Savage*, 327 Mich App 604, 615; 935 NW2d 69 (2019). On plain-error review, the defendant has the burden to show (1) "error"; (2) that was "plain," meaning "clear or obvious"; and (3) that affected substantial rights, meaning, that it caused prejudice, i.e., "that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).  "[O]nce a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse," but

"[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (citation and quotation marks omitted; last alteration in original).

The Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures. US Const, AM IV; Const 1963, art 1, § 11. "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *People v Cohen*, 294 Mich App 70, 75; 816 NW2d 474 (2011) (citation and quotation marks omitted). Defendant does not dispute that there was probable cause for his arrest, and indeed, the record establishes that there was. Officer Perrault was called to the hospital, he interviewed Wood and Rice, and saw the severe injuries to Wood's head. He also interviewed Denomie Sr., Morin, and Frechen. The information from these witnesses provided Officer Perrault with probable cause to arrest defendant. *Id*.

"Ordinarily, searches or seizures conducted without a warrant are unreasonable per se," unless an exception to the warrant requirement applies. *People v Woodard*, 321 Mich App 377, 383; 909 NW2d 299 (2017) (citation and quotation marks omitted). Officer Perrault testified at the preliminary examination that he did not have a warrant when he arrested defendant at Denomie Sr.'s house. However, MCL 764.15(1) provides, in relevant part:

> (1) A peace officer, without a warrant, may arrest a person in any of the following situations:

> * * *

> (b) The person has committed a felony although not in the peace officer's presence.

> (c) A felony in fact has been committed and the peace officer has reasonable cause to believe the person committed it.

> (d) The peace officer has reasonable cause to believe a . . . felony has been committed and reasonable cause to believe the person committed it.

Thus, defendant can show no plain error affecting his substantial rights when Officer Perrault had statutory authority to arrest defendant without a warrant where reasonable cause existed to believe that defendant had committed a felony—AWIGBH.

Additionally, defendant seems to argue that because the police entered Denomie Sr.'s home without consent or a warrant, defendant's arrest was illegal. "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v New York*, 445 US 573, 586; 100 S Ct 1371; 63 L Ed 2d 639 (1980) (quotation and citation omitted). A defendant has standing to challenge a search if he had "a reasonable expectation of privacy in the place that was searched." *People v Powell*, 235 Mich App 557, 561; 599 NW2d 499 (1999) (quotation marks and citations omitted). The defendant has the

burden to establish standing. *Id.* Standing must be determined under the totality of the circumstances. *People v Brown*, 279 Mich App 116, 130; 755 NW2d 664 (2008). Factors to consider in determining a reasonable expectation of privacy include "ownership, possession and/or control of the area searched," the "historical use of the property," the person's "ability to regulate access," "the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case." *Id.* (quotation marks and citation omitted). Overnight guests at a residence have a reasonable expectation of privacy, but mere visitors do not. See *Minnesota v Carter*, 525 US 83, 89-90; 119 S Ct 469; 142 L Ed 2d 373 (1998); *People v Parker*, 230 Mich App 337, 340-341; 584 NW2d 336 (1998). Defendant was arrested at his father's home. There is no indication that defendant lived with his father, or planned to stay overnight there. Thus, as a mere visitor, defendant lacked standing to challenge the search, and is not entitled to relief on appeal.

Moreover, defendant has not met his burden of establishing the right to a remand for an evidentiary hearing regarding this issue. If a defendant has standing to challenge a search, "[g]enerally, a search conducted without a warrant is unreasonable unless there exist[s] both probable cause and a circumstance establishing an exception to the warrant requirement." *People v Snider*, 239 Mich App 393, 407; 608 NW2d 502 (2000) (internal quotation marks and citation omitted). However, there is no indication from the preliminary examination transcript or the jury trial transcript what the circumstances were under which Officer Perrault entered Denomie Sr.'s home. Officer Perrault testified at the preliminary examination that when he arrested defendant, he came in with his gun drawn, not his taser, he did not see that defendant was armed, he did not have a warrant, but he was aware that defendant was on parole. The record is insufficient to determine this issue, presumably, because it was never specifically addressed by the trial court.

Under MCR 7.216(A)(5), this Court has authority to remand for an evidentiary hearing "at any time . . . in its discretion, and on the terms it deems just." Remand is appropriate if a factual record is required for appellate consideration of an issue. MCR 7.211(C)(1)(a)(*ii*). The moving party must support a request for remand with an affidavit or other offer of proof. MCR 7.211(C)(1). Defendant fails to meet his burden. He alleges that Officer Perrault entered Denomie Sr.'s home without consent in his Standard 4 brief without any evidentiary support. He relies on a probable cause affidavit allegedly authored by Officer Perrault.[1] However, the affidavit was not part of the lower court record, so it is inappropriate to make findings of fact based on this exhibit. See *Powell*, 235 Mich App at 561 n 4 (noting that it is improper for a party to expand the record on appeal). Therefore, because defendant failed to raise this issue in the lower court, lacks standing to challenge the search and seizure, and fails to establish that he is entitled to a remand for an evidentiary hearing on whether the circumstances surrounding Officer Perrault's entry into the home established an exception to the warrant requirement, he is not entitled to relief on appeal.

---

[1] The affidavit of probable cause submitted by defendant is not signed by the alleged author, Officer Perrault, or any magistrate. There is no information in the lower court record explaining this discrepancy.

## V. PRETRIAL PROCEEDINGS

Defendant argues in his Standard 4 brief that his preliminary examination was improperly adjourned to a date later than the timelines provided by statute. We conclude that defendant waived this argument.

As stated above, an issue must be raised, addressed, and decided in the trial court to be preserved for appeal. *Metamora Water Serv, Inc*, 276 Mich App at 382. Defendant raised issues regarding pretrial procedure several times during the lower court proceedings. He first asserted an error in the preliminary examination proceedings in his petition for a writ of habeas corpus, which was subsequently denied. He asserted that the statutory timelines were not followed at the November 21, 2019 motion hearing, the court read a letter it received from defendant at the January 2, 2020 hearing on DeForge's first motion to withdraw in which defendant made the same assertion, and defendant filed a pro se motion before trial including this argument. The trial court never addressed this issue, so it is not preserved. *Id.* However, this does not preclude the Court from reviewing it. *Zitka*, 325 Mich App at 48. This unpreserved issue is also reviewed for plain error affecting defendant's substantial rights. *Savage*, 327 Mich App at 615.

MCL 766.4(1) provides, in relevant part, that

> the magistrate before whom any person is arraigned on a charge of having committed a felony shall set a date for a probable cause conference to be held not less than 7 days or more than 14 days after the date of the arraignment, and a date for a preliminary examination of not less than 5 days or more than 7 days after the date of the probable cause conference. The dates for the probable cause conference and preliminary examination shall be set at the time of arraignment. . . .

"The probable cause conference may be waived by agreement between the prosecuting attorney and the attorney for the defendant. The parties shall notify the court of the waiver agreement and whether the parties will be conducting a preliminary examination, waiving the examination, or entering a plea." MCL 766.4(2).

Defendant relies on a previous version of MCL 766.4, which required that a preliminary examination be scheduled not more than 12 days after which a person charged with a felony is brought before a magistrate. In *People v Weston*, 413 Mich 371, 372; 319 NW2d 537 (1982), the Supreme Court concluded that the failure of a magistrate to hold a preliminary examination within 12 days of the defendant's arraignment entitled the defendant to discharge from custody. However, a defendant must invoke the "*Weston* remedy" of dismissal and discharge from custody by raising the 12-day-issue before the preliminary examination is held. *People v Crawford*, 429 Mich 151, 156-157; 414 NW2d 360 (1987). Failure to raise this issue before the commencement of the preliminary examination results in a waiver to any such remedy. *Id.* at 161. Defendant did not raise this issue before the preliminary examination took place on September 17, 2019. He first raised it in his petition for a writ of habeas corpus, filed October 3, 2019, and several more times before trial. Therefore, defendant has waived this issue. *Id.*

Moreover, MCL 766.7 provides that "[a]n adjournment, continuance, or delay of a preliminary examination may be granted by a magistrate without the consent of the defendant or

the prosecuting attorney for good cause shown.  A magistrate may adjourn, continue, or delay the examination of any cause with the consent of the defendant and prosecuting attorney."  At the November 21, 2019 hearing on the motion to withdraw filed by defendant's first attorney, Harrington, defendant asserted that the prosecutor had adjourned the preliminary examination without 48 hours' notice, and past the statutory timelines.  Harrington responded that he did object to the adjournment on the first scheduled date; however, the judge had found good cause to adjourn because witnesses had not been subpoenaed, so it was rescheduled and held at a later date.  The unavailability of witnesses constitutes good cause to adjourn a preliminary examination.  *People v Horne*, 147 Mich App 375, 377-378; 383 NW2d 208 (1985).  Therefore, there was no plain error affecting defendant's substantial rights when the trial court adjourned the preliminary examination for good cause.

Affirmed.


/s/ Kathleen Jansen
/s/ Michael J. Kelly
/s/ Amy Ronayne Krause